**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
NYU LANGONE HEALTH SYSTEM AND NYU    :
LANGONE HOSPITALS,    :
    :  Case No. 1:23-cv-05032 (VEC)
    Plaintiffs,    :
    :
    -against-    :
    :
NORTHWELL HEALTH, INC.,    :
    :
    Defendant.    :
-----------------------------------------------------------------X

**DEFENDANT NORTHWELL HEALTH, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

FRANKFURT KURNIT KLEIN & SELZ, P.C.

Kimberly M. Maynard
Edward H. Rosenthal
Zoe Rachael Staum
Amanda B. Barkin
28 Liberty Street
35th Floor
New York, New York 10005

*Attorneys for Defendant Northwell Health, Inc.*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**            **1**

**STATEMENT OF FACTS**            **2**

**ARGUMENT**            **6**

    I.    NYU LANGONE FAILS TO ARTICULATE A PROTECTABLE TRADE DRESS UNDER 15 U.S.C. § 1125(A)(1)(A) [COUNT I]......................6

        A.    NYU Langone's imprecise and inconsistent laundry lists of common elements do not comprise a protectable trade dress.....................6

        B.    NYU Langone does not adequately allege inherent distinctiveness or secondary meaning. ................................................9

        C.    NYU Langone does not properly allege that the trade dress is non-functional. ...............................................11

    II.    NYU LANGONE'S UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN CLAIM FAILS WITH ITS TRADE DRESS CLAIM. [COUNT II] ...............................................12

    III.    NYU LANGONE FAILS TO STATE A CLAIM FOR FALSE ADVERTISING UNDER 15 U.S.C. § 1125(A)(1)(B) [COUNT III] ..................12

        A.    NYU Langone does not plead a false statement of fact............................13

        B.    NYU Langone does not plead that the Northwell Claims caused consumer confusion or deception. ............................................14

        C.    NYU Langone does not plead that Northwell Claims are material. ..........16

        D.    NYU Langone does not plead that the Northwell Claims caused injury. ...............................................16

    IV.    THE NYGBL AND COMMON LAW CLAIMS MUST BE DISMISSED [COUNTS IV, V]................................................17

        A.    NYU Langone's state and common law claims fall with the Lanham Act claims. ...............................................17

        B.    NYU Langone does not allege a specific and substantial injury to the public interest. .....................................18

        C.    This Court should decline to exercise supplemental jurisdiction. .............19

**CONCLUSION**            **19**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AM Gen. LLC v. Activision Blizzard, Inc.*,
  450 F. Supp. 3d 467 (S.D.N.Y. 2020) ........................................................................18

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F. 3d 51 (2d Cir. 2016) ............................................................................13, 16

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
  No. 21-cv-7712-VEC, 2022 WL 3227861 (S.D.N.Y. Aug. 10, 2022) (Caproni,
  J.) ..................................................................................................................7, 10

*Avis Rent a Car System, Inc. v. Hertz Corp.*,
  782 F. 2d 381 (2d Cir.1986) .............................................................................13

*Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*,
  984 F. Supp. 768 (S.D.N.Y. 1997) ....................................................................17

*Bd.-Tech Elec. Co. v. Eaton Corp.*,
  737 F. App'x 556 (2d Cir. 2018) .................................................................14, 15

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
  973 F. 2d 1033 (2d Cir. 1992) ...........................................................................18

*Bubble Genius LLC v. Smith*,
  239 F. Supp. 3d 586 (E.D.N.Y. 2017) ...............................................................12

*Caliko, SA v. Finn & Emma, LLC*,
  No. 21-cv-3849-VEC, 2022 WL 596072 (S.D.N.Y. Feb. 28, 2022) (Caproni,
  J.) ....................................................................................................................7, 9

*Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*,
  No. 20-cv-7899-PAC, 2022 WL 4109721 (S.D.N.Y. Sept. 8, 2022) .................8, 9

*Chanel Inc, v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020) ...........................................................18, 19

*Coach, Inc. v. Horizon Trading USA Inc.*,
  908 F. Supp. 2d 426 (S.D.N.Y. 2012) .................................................................18

*Davis v. Avvo, Inc.*,
  345 F. Supp. 3d 534 (S.D.N.Y. 2018) .................................................................17

*Deutsch v. Hum. Res. Mgmt., Inc.*,
No. 19-cv-5305-VEC, 2020 WL 1877671 (S.D.N.Y. Apr. 15, 2020) (Caproni,
J.)......................................................................................................................................19

*DO Denim, LLC v. Fried Denim, Inc.*,
634 F. Supp.2d 403 (S.D.N.Y. 2009)..............................................................................12

*Eliya, Inc. v. Steven Madden, Ltd.*,
749 F. App'x 43 (2d Cir. 2018) .........................................................................................7

*Express Gold Cash, Inc. v. Beyond 79, LLC*,
No. 18-cv-0837-EAW, 2019 WL 4394567 (W.D.N.Y. Sept. 13, 2019) ..........................13, 14

*Gottlieb Dev., LLC v. Paramount Pictures Corp.*,
590 F. Supp. 2d 625 (S.D.N.Y. 2008)..............................................................................18

*Int'l Leisure Prod., Inc. v. FUNBOY LLC*,
747 F. App'x 23 (2d Cir. 2018) .....................................................................................8, 9

*Josie Maran Cosms., LLC v. Shefa Grp. LLC*,
624 F. Supp. 3d 281 (E.D.N.Y. 2022) .............................................................................18

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
113 F. 3d 373 (2d Cir. 1997)............................................................................................7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........................................................................................................16

*Lokai Holdings v. Twin Tiger USA LLC*,
306 F. Supp. 3d 629 (S.D.N.Y. 2018)..............................................................................14

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
292 F. Supp. 2d 535 (S.D.N.Y. 2003)...............................................................................7

*Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*,
960 F. 2d 294 (2d Cir. 1992)...........................................................................................15

*Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp.*,
No. 12-cv-3648-SJF-ETB, 2013 WL 1911434 (E.D.N.Y. May 7, 2013)...............................16

*Parker Waichman LLP v. Gilman L. LLP*,
No. 12-cv-4784-JS-AKT, 2013 WL 3863928 (E.D.N.Y. July 24, 2013) ...............................9

*Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*,
926 F. 2d 134 (2d Cir.1991)............................................................................................14

*S.C. Johnson & Son, Inc. v. Clorox Co.*,
241 F. 3d 232 (2d Cir. 2001)...........................................................................................12

*Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*,
  25 F. Supp. 2d 154 (S.D.N.Y. 1998)...............................................................6, 18

*Steven Madden, Ltd. v. Yves Saint Laurent*,
  No. 18-cv-7592-VEC, 2019 WL 2023766 (S.D.N.Y. May 8, 2019) (Caproni,
  J.)....................................................................................................................*passim*

*Sussman-Automatic Corp. v. Spa World Corp.*,
  15 F. Supp. 3d 258 (E.D.N.Y. 2014) ....................................................................12

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F. 3d 144 (2d Cir.2007)...........................................................................13, 14

*Tracey Tooker & TT Ltd., Inc. v. Whitworth*,
  212 F. Supp. 3d 429 (S.D.N.Y. 2016).....................................................................9

*Turbon Int'l, Inc. v. Hewlett-Packard Co.*,
  769 F. Supp. 262 (S.D.N.Y. 2011) ...........................................................14, 15, 16

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
  No. 12-cv-3599-RWS, 2012 WL 3240442 (S.D.N.Y. Aug. 7, 2012)....................10

*Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*,
  No. 12-cv-3599-RWS, 2013 WL 866867 (S.D.N.Y. Mar. 8, 2013).......................10

**Statutes**

15 U.S.C. § 1125(A)(1)............................................................................6, 12, 17

28 U.S.C. § 1367(c)(3)...........................................................................................19

Lanham Act..............................................................................................*passim*

New York General Business Law...............................................................*passim*

Defendant Northwell Health, Inc. ("Northwell") respectfully submits this memorandum of law in support of its motion to dismiss the complaint filed by Plaintiffs NYU Langone Health System and NYU Langone Hospitals (collectively referred to as "NYU Langone").

## PRELIMINARY STATEMENT

NYU Langone broadly claims that Northwell copied the trade dress NYU Langone uses in its advertising and marketing campaigns, but fails to identify with specificity what it claims to own and how Northwell has infringed its alleged rights. Rather than articulating a coherent, comprehensible trade dress, NYU Langone alleges that it has rights in an amorphous amalgamation of different colors, accent colors, font styles and sizes, layouts, formats and what it calls the overall look and feel of its advertising. NYU Langone then attempts to support its claims with cherry-picked examples and misleading side-by-side comparisons between its materials and those of Northwell, many of which were used in different periods of time and to promote entirely different services. For this and the other reasons set forth below, NYU Langone has not come close to alleging a viable claim for trade dress infringement or unfair competition.

NYU Langone's false advertising claim also fails. Here, NYU Langone objects to Northwell's claim that its Lenox Hill Hospital is "NYC's only hospital in the Nation's Top 50" and, therefore, offers the "best care." But these statements are *literally true*—as is clear from the face of the advertisement in question which makes clear that the claim is specifically based on the Healthgrades ratings. Notably, NYU Langone does not allege that these statements are misleading, material to consumer's purchasing decisions, or have caused any cognizable injury. Accordingly, its federal false advertising claims must be dismissed.

NYU Langone's claims under the New York General Business Law suffer from the same deficiencies as its federal claims, and are inadequate in other ways as well. These laws were not designed as an additional tool for businesses bringing Lanham Act claims against competitors

and, instead, are designed to offer *consumers* a means of challenging deceptive advertising. They require a competitor to allege harm to consumers above and beyond the harm allegedly sustained to itself, yet NYU Langone makes no such allegations. In any event, as NYU Langone fails to state any claim under the Lanham Act, this Court should exercise its discretion and decline to retain supplement jurisdiction over NYU Langone's state and common law claims.

### STATEMENT OF FACTS[1]

This dispute is between two major health care systems, both located in the New York Metropolitan area. Complaint ("Compl."), ¶¶ 4-6. NYU Langone brings a variety of causes of action based upon what it describes as Northwell's "pattern and practice of copying NYU Langone's distinctive advertising and marketing campaigns. . . ." *Id*. Yet NYU Langone fails to articulate exactly what elements of "distinctive" advertising it claims to own, what it believes Northwell misappropriated, or how Northwell is misleading consumers.

***NYU Langone's Incomprehensible Trade Dress Claims***

NYU Langone claims proprietary rights in a trade dress composed of "unique color schemes (including featuring the same or a similar distinct purple color)" as well as "certain specific accent colors, color combinations, font styles and types, headline styles, layout and format, and overall look and feel. . . ." (*Id*. ¶ 2), but does not provide a single, clearly articulated definition for that trade dress, leaving Northwell to guess as to what NYU Langone is complaining about. For example, in Paragraph 13, NYU Langone refers to numerous depictions of its advertising (in Paragraph 12), which use the color purple along with blue, white, yellow, and red, as well as a variety of advertising messages presented in a number of different ways

---

[1] This Statement of Facts is based upon the allegations in Plaintiffs' Complaint. For purposes of this motion, Northwell neither admits nor denies these allegations.

2

using fonts of various styles and colors. Compl. ¶¶ 12-13. NYU Langone characterizes this as its

"Distinctive Advertising" and claims that Northwell has copied it, including by:

> the predominant use of the same or a very similar color purple, the use of the same or similar accent colors (*e.g.*, teal and orange), specific font types, colors and styles (*i.e.*, all cap sans serif white headlines, as well as white font with certain words and phrases emphasized in the same or similar accent colors), similar layouts in terms of placement and use of accent colors and photos, and use of the same headline style and format.

Compl. ¶ 13. Then, in Paragraph 24, NYU Langone gives another description, saying that its

advertising campaigns prominently feature:

> a distinctive purple color, the use of particular accent colors (*e.g.*, teal and orange) and photos, specific font types, colors and headline styles (*i.e.*, all cap sans serif white headlines, as well as white fonts with certain words and phrases emphasized in the same or similar accent colors), use of purple, white, and accent color combinations in words and phrases in the ad headlines, and specific layouts in terms of placement and use of accent colors.

Compl. ¶ 24.

 Not only are these definitions vague and over-inclusive—characterized by a laundry list

of purportedly proprietary elements (some of which are referenced with an "e.g.")—but they are

not the only definitions NYU Langone provides. Instead, NYU Langone articulates still other

descriptions of its trade dress throughout the Complaint, including in the "factual background"

(*see, e.g.*,  Compl. ¶¶ 24, 25, 26, 45, 47) and in the specific allegations in Count I for

"Infringement of Unregistered Trade Dress" and Count II for "Unfair Competition and False

Designation of Origin". Compl. ¶¶ 61, 74.[2]

---

[2] NYU Langone makes much of its and New York University's use of the color purple, or more specifically violet (*see e.g*., Compl. ¶ 14), but does not allege that it owns trademark or other exclusive rights in that color. Indeed, the two trademark registrations referenced in the Complaint are not for the color purple, but only for logos containing a white cross in a purple circle. *Id.* ¶ 21. There is no allegation that Northwell has used anything resembling those logos.

It is impossible to understand from the Complaint how and when Northwell purportedly infringed NYU Langone's rights. NYU Langone does not (and cannot) point to examples where Northwell has used the same or similar words in its advertising. Instead, NYU Langone cherry-picks from its ads and Northwell's ads, placing them side-by-side and ignoring differences in text and gaps in time, all in a strained effort to depict a pattern of copying that simply does not exist. For example, in Paragraph 44 of the Complaint, NYU Langone shows a social media advertisement from March 1, 2021 and compares it to a Northwell post it identifies as from February 2023. Compl. ¶ 44. There is no alleged similarity between the messages conveyed in the ads, and they are not even for the same services. *Id.* Rather, NYU Langone selected one of its ads that used orange and white initial capital lettering on a purple background and placed it side-by-side with a Northwell advertisement from *two years later* that uses similar colors but presents an entirely different message in all capital lettering, in an entirely different size and style font, and with the colors in a different order. Compl. ¶ 44.[3] The other side-by-side examples offered by NYU Langone are equally inapt. *See, e.g.,* Compl. ¶¶ 45-49.

In addition to relying on varied and unclear definitions of its claimed trade dress, NYU Langone neglects to include allegations that its purported trade dress is inherently distinctive or has acquired secondary meaning, or that it is non-functional. Indeed, most (if not all) of the elements of NYU Langone's purported trade dress are commonly used by marketers, making it doubtful that NYU Langone will ever be able to plausibly allege distinctiveness and non-functionality. As a result of these deficiencies, NYU Langone's allegations for federal and state

---

[3]  This ad, like all of the Northwell advertising shown in the Complaint, prominently features the name "Northwell," making the source of the services advertised obvious.

4

trademark infringement under the Lanham Act (Counts I-II), the New York General Business Law (Count IV), and common law (Count VI) fail as a matter of law.

***NYU Langone's Deficient False Advertising Claim***

NYU Langone's false advertising allegations are equally futile. NYU Langone focuses on two statements in a Northwell ad published in its *Northwell Connections Magazine* (the "Northwell Ad") that (i) "Lenox Hill is NYC's only hospital in the Nation's Top 50," and (ii) Northwell "offer[s] the best care in Manhattan" (the "Northwell Claims"). Compl. ¶ 82. As NYU Langone itself alleges and shows in the Complaint (Compl.¶¶ 49, 52), the Northwell Ad also includes a large graphic of the Healthgrades "America's 50 Best Hospitals" logo, upon which the Northwell Claims are based. NYU Langone then explicitly acknowledges, as it must, given the clear and conspicuous presence of the Healthgrades logo in the ad, that the Northwell Claims are literally true: Healthgrades did, in fact, include Lenox Hill on its top 50 list. Compl. ¶¶ 49, 52.

NYU Langone's efforts to suggest that the Northwell Claims are false because of its own rankings in *U.S. News & World Report*[4] are irrelevant, as those rankings have no bearing on the undisputed fact that the Northwell Ad accurately represents the Healthgrades ranking. While this alone undercuts NYU Langone's claims, NYU Langone also fails to allege that the Northwell Claims have caused consumer confusion or deception, are material to consumer purchasing decisions, and/or have caused any cognizable damage. As a result, NYU Langone does not state a claim for false advertising under the Lanham Act (Count III) or for violation of any related state (Count V) or common law (Count VII).

---

[4] *U.S. News & World Report* has recognized Northwell as the most awarded health system in New York and, as of August 2023, ranked Northwell's North Shore University Hospital, along with NYU Langone and two other hospitals, as #1 in New York State.

*NYU Langone's Faulty Claims under the New York General Business and Common Law*

NYU Langone's claims for deceptive practices (Count IV) and false advertising (Count V) under New York's General Business Law must be dismissed because they are not available in an action between competitors, and NYU Langone does not allege that Northwell's acts harm consumers beyond the purported harm NYU Langone has sustained. Moreover, NYU Langone's state and common law claims fail for the same reason as its Lanham Act claims. In any event, once NYU Langone's Lanham Act claims (the alleged basis for subject matter jurisdiction) are dismissed, this Court should decline to exercise supplemental jurisdiction over the state and common law claims.

## **ARGUMENT**

## I.    NYU LANGONE FAILS TO ARTICULATE A PROTECTABLE TRADE DRESS UNDER 15 U.S.C. § 1125(A)(1)(A) [COUNT I]

To state a claim for its unregistered trade dress infringement, NYU Langone must allege (1) a *clearly articulated* design or combination of features; (2) that the trade dress is either inherently distinctive or has acquired secondary meaning; (3) a likelihood of confusion between the source of the parties' products; and (4) that the trade dress is not functional. *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-cv-7592-VEC, 2019 WL 2023766, at *5 (S.D.N.Y. May 8, 2019) (Caproni, J.). NYU Langone's Complaint omits plausible allegations on the first, second, and fourth elements.

### **A.    NYU Langone's imprecise and inconsistent laundry lists of common elements do not comprise a protectable trade dress.**

Trade dress law does not "protect an idea, a concept or a generalized type of appearance[.]" *Sports Traveler, Inc. v. Advance Mag. Publishers, Inc.*, 25 F. Supp. 2d 154, 161 (S.D.N.Y. 1998) (citation omitted). To establish rights in a trade dress, NYU Langone must provide a precise expression of the character and scope of the claimed trade dress and articulate

the elements of design with specificity. *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-cv-7712-VEC, 2022 WL 3227861, at *3 (S.D.N.Y. Aug. 10, 2022) (Caproni, J.). Without such precision, "courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F. 3d 373, 381 (2d Cir. 1997). A laundry list of elements, without any explanation as to how they are distinctive, will not suffice. *See Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (granting motion to dismiss because plaintiff's trade dress consisted of a laundry list of elements); *Caliko, SA v. Finn & Emma, LLC*, No. 21-cv-3849-VEC, 2022 WL 596072, at *11 (S.D.N.Y. Feb. 28, 2022) (Caproni, J.) (Adequately articulating a trade dress "requires more than just providing a 'laundry list' of the elements that constitute the product's design; [p]laintiff must allege how those elements are distinctive.") (collecting cases).

Consistency is also critical. "[A] stable, unvarying list of distinct design features that is required to establish the character and scope" of a trade dress. *APP Grp.*, 2022 WL 3227861, at *2 (dismissing the trade dress claim where definition of trade dress was no more than an "indefinite, high-level description"). Ultimately, without understanding which specific features deserve protection, the Court would be "unable to shape narrowly-tailored relief." *Landscape Forms*, 113 F. 3d at 381.

Here, the Complaint is littered with multiple different articulations (each a laundry list) of the elements of NYU Langone's purported trade dress, and gives no explanation as to how any of those elements are distinctive. In Paragraphs 11 and 61, NYU Langone provides two different, lengthy definitions of its trade dress. Compl. ¶¶ 11, 61. It then gives yet another description in Paragraph 13, and still others in Paragraphs 23, 24, 25, 26, 44, 45, 46, 47, 48, 53, and 54. This, alone, is fatal to the trade dress claim. *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch*

*Co.*, 292 F. Supp. 2d 535, 538, 542-45 (S.D.N.Y. 2003) (concluding that line of pants did not have a "consistent overall look" and holding that a "range of theoretically possible combinations" of elements were "unprotectable as a singular trade dress").

In addition to inconsistent descriptions of the trade dress, NYU Langone includes undefined characteristics (some denoted by "*e.g.*" and "*i.e.*"), incorporates or "other design elements" without identifying what they are, and alters its descriptions of the accent colors, layouts, and possible combinations that purportedly make up its trade dress. *See e.g.*, Compl. ¶¶ 23, 55, 61. This too, is fatal to its claim. *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-cv-7899-PAC, 2022 WL 4109721, at *4 (S.D.N.Y. Sept. 8, 2022) (dismissing trade dress claims because definition of trade dress included "nebulous words" such as "substantially" and "very roughly flattish" base).

Moreover, at various points, NYU Langone asserts protection over advertisements that include the color purple and others that do not; that have teal blue and white accents, orange and white accents, just teal accents, or just orange accents; that have unspecified accent color combinations; and that use "other colors, such as yellow/gold" for emphasis. Compl. ¶¶ 13, 24-26, 44-48, 53-54. It also claims that its purported trade dress may involve "alternating white/purple/teal blue lettering" or all white lettering. Compl. ¶¶ 24, 45. Keeping track of NYU Langone's convoluted allegations of its color-related design elements is practically impossible. *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) (dismissing complaint, *inter alia*, for lack of non-generic features and finding "the multiplicity of possible combinations of optional features[,]" fails to provide the court with "a single distinctive look" to protect).

Importantly, these deficiencies cannot be rescued by the images of the alleged trade dress in the body of the Complaint or exhibits, as these suffer from the same problems as the trade dress descriptions. *See e.g., id.* at 26 ("[A] visual representation of the asserted trade dress does not excuse the party seeking protection from its burden of point[ing] to the elements and features that distinguish its trade dress.") (citation omitted); *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) ("Although [plaintiff] has submitted numerous photos of her hats, the Court cannot distill the distinctive elements of [plaintiff]'s trade dress from a collection of photos.").

Without a specific, consistent articulation of its purported trade dress complete with identification of the distinctive elements, it is impossible for the Court to adjudicate NYU Langone's claims or for Northwell to defend itself. The Court should dismiss the entire trade dress infringement claim. *See Cardinal Motors*, 2021 WL 1758881, at *1 ("Plaintiff's failure to specify the character and scope of its trade dress is dispositive here[.]"); *Caliko*, 2022 WL 596072, at *11 ("The Court need not address all elements of [p]laintiff's trade dress claim because […] [p]laintiff has failed to satisfy the 'threshold requirement' to articulate the elements of its trade dress.") (citation omitted).

**B.    NYU Langone does not adequately allege inherent distinctiveness or secondary meaning.**

In addition to precisely pleading the specific elements of its purported trade dress, NYU Langone must allege that the trade dress is either "inherently distinctive or has acquired secondary meaning in the marketplace." *Steven Madden, Ltd.*, 2019 WL 2023766, at *6 (citation omitted). NYU Langone's single, bald statement that the trade dress is inherently distinctive (Compl. ¶ 64) is plainly insufficient. *Parker Waichman LLP v. Gilman L. LLP*, No. 12-cv-4784-JS-AKT, 2013 WL 3863928, at *4 (E.D.N.Y. July 24, 2013) (dismissing trade dress claim

because, *inter alia*, allegations of distinctiveness are conclusory and fail to plausibly suggest that the combination of elements are synonymous with plaintiff's company).

Because NYU Langone is unable to plausibly allege inherent distinctiveness, it must plausibly allege that its trade dress acquired secondary meaning. "[A]cquisition of secondary meaning is the process by which a product's appearance, while not inherently distinctive at its inception, becomes distinctive as consumers grow to associate it with the maker or sponsor of the product." *APP Grp.*, 2022 WL 3227861, at *4 (citation omitted). Establishing secondary meaning is particularly difficult in the case of a trade dress claim that involves product design and colors. *Steven Madden, Ltd.*, 2019 WL 2023766, at *6 ("[C]ourts apply a more stringent standard [for product design] because restricting the use of a design feature may impede fair competition."); *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599-RWS, 2012 WL 3240442, at *7 (S.D.N.Y. Aug. 7, 2012) (noting that the burden for alleging secondary meaning in color-related trade dress is high because color marks are generally not distinctive and dismissing the claim for failure to allege facts meeting the standard).

When evaluating assertions that a trade dress has achieved secondary meaning, courts consider whether there are allegations regarding consumer surveys, sales success, unsolicited media coverage, attempts to plagiarize the trade dress, advertising expenditures, and the length and exclusivity of use. *APP Grp.*, 2022 WL 3227861, at *3. These allegations may not be general in nature and, instead, must pertain to the alleged trade dress. *Id.* at *4 (dismissing claims because, *inter alia*, media coverage offered as proof of secondary meaning lacks specific references to purported core elements of claimed trade dress); *Urb. Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12-cv-3599-RWS, 2013 WL 866867, at *3-4 (S.D.N.Y. March 8, 2013) (advertising spending does not support "a finding of secondary meaning" where

"there is no contention that any of those advertisements or promotions stressed or emphasized the alleged trade dress").

NYU Langone does not adequately plead any of these factors. First, there is no mention whatsoever of sales figures, unsolicited media coverage of the marketing campaigns that supposedly bear the alleged trade dress, or consumer surveys that would support a claim that consumers recognize NYU Langone's purported trade dress as indicating source. Second, there is no allegation that the trade dress is used exclusively by NYU Langone (nor could there be, given the broad range of common, generic features that purportedly comprise the trade dress), or, apart from a generalized reference to its 2017 style guide, any clear allegations as to when NYU Langone began using the various elements of its claimed trade dress.[5]

 As allegations plausibly alleging inherent distinctiveness or secondary meaning are critical to establish a trade dress infringement claim, and both are absent here, NYU Langone's trade dress claims must be dismissed.

**C.    NYU Langone does not properly allege that the trade dress is non-functional.**

NYU Langone must, but does not, allege that its purported trade dress is non-functional. *Steven Madden, Ltd*, 2019 WL 2023766, at *5 ("[P]roduct features that are functional, *i.e.*, essential to the use or purpose of the [product] or ... affect the cost or quality of the [product], are not protectable under the Lanham Act because granting trademark protection would have significant anti-competitive effects.") (cleaned up). Yet, aside from a single, conclusory statement that "[t]he NYU Langone Trade Dress constitutes valid trade dress because it is inherently distinctive, non-functional and serves to identify NYU Langone" (Compl. ¶ 64), NYU

---

[5] NYU Langone's allegations regarding its purported use of purple are not relevant to the length of the use of the alleged trade dress, as it does not claim rights in purple, but in a number of different articulations of a multi-colored trade dress, only one element of which is purple.

Langone makes no specific or meaningful allegation that its trade dress is non-functional—which is unsurprising, given that the purported trade dress is comprised of a number of different elements (such as contrasting colors that grab attention and font that is easy to read) commonly used in advertising campaigns to make the ads attractive and easy to read. Compl. ¶¶ 24, 27, 61. *DO Denim, LLC v. Fried Denim, Inc*., 634 F. Supp.2d 403, 408 (S.D.N.Y. 2009) (dismissing trade dress claim where the complaint "include[d] a conclusory assertion that the [product] is 'unique and nonfunctional,' but proffer[ed] no factual allegations demonstrating that the design is not aesthetically or otherwise functional").

## II.    NYU LANGONE'S UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN CLAIM FAILS WITH ITS TRADE DRESS CLAIM. [COUNT II]

NYU Langone's unfair competition and false designation of origin claim is based on the same alleged facts as its trade dress infringement claim and must be dismissed, both because it fails for the same reasons as the trade dress claim and because it is duplicative. *See, e.g., Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 601 (E.D.N.Y. 2017) (dismissing unfair competition claim because plaintiff failed to plead sufficient facts to allege trade dress claim); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272 (E.D.N.Y. 2014) (dismissing unfair competition claim as duplicative of the trademark infringement).

## III.   NYU LANGONE FAILS TO STATE A CLAIM FOR FALSE ADVERTISING UNDER 15 U.S.C. § 1125(A)(1)(B) [COUNT III]

To prevail on its claim that the Northwell Claims constitute false advertising under the Lanham Act, NYU Langone must plead: (1) a false statement of fact; (2) that is likely to confuse consumers; (3) that is material; (4) that was placed in interstate commerce; and (5) that it has been injured as a result. *S.C. Johnson & Son, Inc. v. Clorox Co*., 241 F. 3d 232, 238 (2d Cir. 2001). Because NYU Langone does not properly plead that the Northwell Claims are literally or

impliedly false, that they caused consumer confusion, that they are material, or that they caused it injury, its false advertising claim should be dismissed.

### A.    NYU Langone does not plead a false statement of fact.

The threshold element of a false advertising claim is a plausible allegation that the advertiser made a statement that was literally false or impliedly false. *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F. 3d 144, 153 (2d Cir.2007). NYU Langone does not allege either.

### 1.    The Northwell Claims are not literally false.

A literal falsehood is false on its face, and requires the statement to be both false and unambiguous. *Apotex Inc. v. Acorda Therapeutics, Inc*., 823 F. 3d 51, 63 (2d Cir. 2016). Assessing falsity requires that the challenged statements be analyzed in context, as part of the advertisement as a whole. *Avis Rent a Car System, Inc. v. Hertz Corp*., 782 F. 2d 381, 385 (2d Cir.1986) (finding advertisement that car rental company had more new cars than competitor was not literally false because, viewing the statement in context, the fine print referred to cars available for rent, not total cars owned).

Here, as is clear from viewing the ad in which the Northwell Claims appear as a whole, *i.e.*, reading them in context, the Northwell Claims clearly are based on the Healthgrades rankings. Compl. ¶ 49. NYU Langone acknowledges this fact, and does not allege that Northwell misrepresents its Healthgrades ranking. Compl. ¶ 52. In other words, NYU Langone does not, and cannot, plead literal falsity. *Express Gold Cash, Inc. v. Beyond 79, LLC*, No. 18-cv-0837-EAW, 2019 WL 4394567, at *6 (W.D.N.Y. Sept. 13, 2019) (finding defendant's representation that it was "ranked #1" by the Today Show was not literally false).

### 2.    The Northwell Claims are not impliedly false.

To allege that the Northwell Claims are impliedly false, NYU Langone must plead facts to support the inference that (i) the statements "leave an impression on the listener or viewer that

conflicts with reality;" *and* (ii) the statements result in "consumer confusion or deception." *Time Warner Cable, Inc*., 497 F. 3d at 153. NYU Langone pleads neither.

*First*, NYU Langone fails to allege that the Northwell Claims leave an impression on consumers that conflicts with the truth. *Id*. Indeed, NYU Langone does not even attempt to identify what misleading "impression" the statements purportedly leave on consumers—likely because the only plausible impression is the accurate conclusion that Northwell's Lenox Hill Hospital is NYC's only hospital in the Healthgrades "Top 50 in the Nation" list and, accordingly, provides the best care in Manhattan. Compl. ¶ 52. *Turbon Int'l, Inc. v. Hewlett-Packard Co*., 769 F. Supp. 262, 268-69 (S.D.N.Y. 2011) (Plaintiff did not state an "impliedly false" claim where it failed to plead facts suggesting that defendant's statements conflicted with "reality").

*Second*, as discussed below, NYU Langone neglected to include any facts supporting the inference that the Northwell Claims have or are likely to confuse or deceive consumers. *Bd.-Tech Elec. Co. v. Eaton Corp*., 737 F. App'x 556, 560 (2d Cir. 2018).

### B.    NYU Langone does not plead that the Northwell Claims caused consumer confusion or deception.

#### 1.    NYU Langone does not plead actual or likelihood of confusion or deception.

Because it seeks damages, NYU Langone must plead "actual consumer confusion," not just likelihood of confusion, though it does neither. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc*., 926 F. 2d 134, 139 (2d Cir.1991). Courts in this Circuit consistently require more than conclusory allegations of consumer confusion. *See Lokai Holdings v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 639 (S.D.N.Y. 2018) (At "the pleading stage, the plaintiff must allege that consumers or retailers were misled or confused by the challenged advertisement and offer facts to support that claim.") (internal quotation omitted); *Express Gold Cash*, 2019 WL 4394567, at *7 (finding failure to plead "a single fact to support"

14

conclusion that defendant's "ranked #1 language is likely to mislead consumers" fatal to plaintiff's claim that "the ranked #1 language is actionable despite being literally true").

NYU Langone's sole allegation on this element is the conclusory statement that the Northwell Claims "actually deceived or have the tendency to deceive a substantial segment of consumers."[6] Compl. ¶ 84. This does not suffice. *Bd.-Tech Elec. Co.*, 737 F. App'x at 561 (dismissing implied falsity claim where complaint "offers no non-conclusory allegations or facts to support the claim that consumers have been misled or confused").

### 2.  NYU Langone is not entitled to a presumption of confusion or deception.

NYU Langone cannot escape the requirement that it plead facts going to actual confusion or deception by relying on a presumption of confusion or deception. This presumption is available only when an advertising claim is intentionally deceptive. *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F. 2d 294, 298-99 (2d Cir. 1992) (declining to apply presumption that consumers are being deceived because plaintiffs did not "adequately demonstrates that defendant has intentionally set out to deceive the public, and the defendant's deliberate conduct…is of an egregious nature") (internal quotations omitted).

NYU Langone has not and cannot plead that the Northwell Claims were intentionally deceptive, *i.e.* "facts sufficient to support a reasonable inference that [Northwell] knew that the challenged statements were false." *Turbon Int'l, Inc.*, 769 F. Supp. at 269. In fact, it implicitly admitted that the Northwell Claims are literally true (and that Northwell understood them as such), when it plead that Northwell explicitly relied on the Healthgrades' ranking by including it in the Northwell Ad. *Id.*; Compl. ¶¶ 49, 52.

---

[6] The allegation in Paragraph 84 is the *only* allegation in the Complaint that mentions consumer deception in connection with NYU Langone's false advertising claims. All other allegations of purported confusion relate to NYU Langone's trade dress claims.

NYU Langone's effort to close this gap with a blanket assertion that Northwell acted with the intent to deceive because it was "[w]ell aware of NYU Langone's #1 ranking" in *U.S. News & World Report* is legally deficient and plainly illogical. Compl. ¶ 86. Even if Northwell was aware of NYU Langone's #1 ranking in *U.S. News & World Report*, this does not suggest that Northwell intentionally misrepresented its own Healthgrades ranking. *Turbon Int'l, Inc*., 769 F. Supp. at 269 (finding no intentional deception where plaintiff failed to explain how defendant's statements conflicted with the alternate facts plead).

NYU Langone has not plausibly alleged actual consumer confusion or deception and, thus, fails to state a claim for false advertising.

### C.    NYU Langone does not plead that Northwell Claims are material.

NYU Langone does not include a single fact to suggest that the Northwell Claims are material, or "likely to influence purchasing decisions" of consumers. *Apotex Inc.,* 823 F. 3d at 63 (internal quotation omitted). In fact, the word "material" does not appear once in NYU Langone's Lanham Act false advertising allegations. The Court cannot infer materiality when it is missing entirely. *Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp*., No. 12-cv-3648-SJF-ETB, 2013 WL 1911434, at *13 (E.D.N.Y. May 7, 2013) ("speculation as to consumers' possible interpretation" cannot satisfy the requirement that plaintiff plead facts suggesting the a statement is "likely to affect consumers' purchasing decisions"). Accordingly, NYU Langone fails to state a claim for false advertising.

### D.    NYU Langone does not plead that the Northwell Claims caused injury.

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff *must plead* (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118, 140 (2014) (emphasis added). NYU Langone "must offer

16

something more than [its] mere subjective belief that [it] is injured or likely to be damaged." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 543 (S.D.N.Y. 2018) (quoting *Johnson & Johnson*, 631 F. 2d at 189–90).

As a result, in order to state a claim NYU Langone must "allege that consumers were deceived by [the Northwell Claims] and that the deception led consumers to withhold trade from Plaintiff." *Adweek LLC v. Carnyx Grp. Ltd.*, No. 18-cv-9923-GHW, 2019 WL 8405297, at *2 (S.D.N.Y. June 3, 2019) (holding allegation that false statement in a non-comparative ad "harmed plaintiff and its brand" is not enough to allege injury). NYU Langone's bald allegations that "Northwell's conduct has caused damage to NYU Langone" and will continue to "impair the value of NYU Langone's business, goodwill, and reputation" do not satisfy this requirement, and its false advertising claim should be dismissed. Compl. ¶ 87. *Davis,* 345 F. Supp. 3d at 544 (dismissing false advertising claim for failure to plead "facts connecting" defendant's statements "to reputational harm or lost business").

## IV.    THE NYGBL AND COMMON LAW CLAIMS MUST BE DISMISSED [COUNTS IV, V]

### A.    NYU Langone's state and common law claims fall with the Lanham Act claims.

NYU Langone's state law claims under New York General Business Law ("NYGBL") §§ 349 and 350 do not pass muster as they rise and fall with their Lanham Act counterparts. *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997) ("The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under the New York common law for unfair competition and §§ 349 and 350 of the New York General Business Law."); *see also Steven Madden, Ltd.*, 2019 WL 2023766, at *10 (dismissing "derivative state law claims" premised on a violation of the purported trade

dress because counterclaim-plaintiff failed to allege a protectable trade dress under the Lanham Act).

Similarly, the common law claims should be dismissed because they rely on the same underlying set of facts and analysis as the Lanham Act claim. *See Sports Traveler*, 25 F. Supp. 2d at 166; *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F. 2d 1033, 1048 (2d Cir. 1992); *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 486 (S.D.N.Y. 2020) ("[t]he elements of a successful New York common law claim of trademark infringement parallel the elements required for a Lanham Act trademark infringement claim."); *Josie Maran Cosms., LLC v. Shefa Grp. LLC*, 624 F. Supp. 3d 281, 292-93 (E.D.N.Y. 2022) (to "establish a claim for common law unfair competition, the plaintiff must state a Lanham Act claim coupled with a showing of bad faith or intent.") (internal quotation omitted).

### B.    NYU Langone does not allege a specific and substantial injury to the public interest.

To state a claim under the NYGBL, NYU Langone must also allege "specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *Coach, Inc. v. Horizon Trading USA Inc*., 908 F. Supp. 2d 426, 435–36 (S.D.N.Y. 2012) (internal quotation omitted) (citing cases). The type of violation contemplated by the NYGBL "involves an *individual consumer* who falls victim to misrepresentations made by a seller of consumer goods usually by way of false and misleading advertising." *Gottlieb Dev., LLC v. Paramount Pictures Corp*., 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) (internal quotation omitted) (emphasis added). A business competitor may assert a claim under the NYGBL only if the nature of the claim asserted directly affects the interests of consumers. *Chanel Inc, v. RealReal, Inc*., 449 F. Supp. 3d 422, 447 (S.D.N.Y. 2020) (dismissing Section 350 because it

was clear the "gravamen" of the complaint concerned injury to the plaintiff corporation, and "allegations regarding injury to the public at large are conclusory").

NYU Langone fails to make any non-conclusory allegation as to how the public interest has been impacted.   Instead, NYU Langone baldly asserts, without back-up, that "Northwell's conduct has resulted, or is likely to result, in consumer injury or harm to the public interest." Compl. ¶¶ 95, 105. That is simply not enough, and NYU Langone's conclusory allegation does not support the inference that Northwell's "alleged conduct has significant ramifications for the public at large." *Chanel Inc,* 449 F. Supp. at 446 (internal quotation omitted).

### C.    This Court should decline to exercise supplemental jurisdiction.

Because NYU Langone's federal Lanham Act claims fail, the Court may dismiss this action in its entirety without deciding whether NYU Langone's state and common law claims are adequately plead. 28 U.S.C. § 1367(c)(3); *Deutsch v. Hum. Res. Mgmt., Inc*., No. 19-cv-5305-VEC, 2020 WL 1877671, at *6 (S.D.N.Y. Apr. 15, 2020) (Caproni, J.) ("[W]here all the federal claims have been dismissed at a relatively early stage, the district court should decline to exercise supplemental jurisdiction over pendent state-law claims.") (internal quotation omitted).

### <u>CONCLUSION</u>

For the aforementioned reasons, NYU Langone's Complaint should be dismissed in its entirety.

Dated: New York, New York
       August 8, 2023

FRANKFURT KURNIT KLEIN & SELZ, P.C.


By:   */s/ Kimberly M. Maynard*
       Kimberly M. Maynard
       Edward H. Rosenthal
       Zoe Rachael Staum
       Amanda B. Barkin
28 Liberty Street, 35th Floor
New York, New York 10005
Tel.:  (212) 980-0120
Fax:  (347) 438-2114
kmaynard@fkks.com
erosenthal@fkks.com
zstaum@fkks.com
abarking@fkks.com

*Attorneys for Defendant Northwell Health, Inc.*