USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/1/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

NYU LANGONE HEALTH SYSTEM and
NYU LANGONE HOSPITALS,

                                    Plaintiffs,

-against-

NORTHWELL HEALTH, INC.,

                                    Defendant.

------------------------------------------------------------- X

23-CV-5032 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs NYU Langone Health System and NYU Langone Hospitals (together, "NYU Langone") sued Northwell Health, Inc. ("Northwell") for trade dress infringement, unfair competition and false designation of origin, and false advertising under the Lanham Act, as well as related claims under the New York General Business Law ("NYGBL") and New York common law. In support of these claims, NYU Langone alleges that Northwell copied its advertising to trade off the good will and reputation of NYU Langone. Northwell moved to dismiss the Complaint in full for failure to state a claim. For the reasons discussed below, Defendant's motion is GRANTED in part with prejudice and in part without.

## BACKGROUND[1]

NYU Langone and Northwell are not-for-profit health systems that operate in New York. Compl. ¶¶ 4, 6. They are market competitors providing healthcare services in the New York City metropolitan region, meaning that they advertise to the same market. *Id.* ¶¶ 10–11.

---

[1] The Court draws the background facts from the Complaint, Dkt. 1, and assumes the truth of all well-pleaded allegations.

Although NYU Langone is headquartered in Manhattan and Northwell is headquartered on Long Island, both hospital systems now have locations in New York City and on Long Island. *Id.* ¶¶ 4, 6, 40. NYU Langone's presence on Long Island, however, is recent. *Id.* ¶ 40. Between 2019 and 2023, it substantially increased the number of active physicians it has in Nassau and Suffolk Counties; NYU Langone now operates 175 locations on Long Island with 906 physicians. *Id* ¶ 41.

The Allegedly Copied Advertising

New York University, including NYU Langone and other subsidiaries, has used the color purple in its signage and branding for over 100 years. *Id.* ¶ 14. Given this long history with the color purple, it is no surprise that NYU Langone's 2017 style guide (the "Style Guide") includes the "distinct purple" as a preferred color. *Id.* ¶ 23. The Style Guide suggests the distinct shade of purple be "prominently feature[d]" with white font and accent colors like teal and orange. *Id.* ¶ 24. In line with this recommendation, NYU Langone's digital, print, billboard, and other media advertisements feature purple:




*Id.* ¶ 12. The Complaint contains many photos of NYU Langone's advertising over the last seven years showing predominant use of purple backgrounds. *Id.* Ex. A (showing photos of

advertisements from 2017 to 2023). NYU Langone alleges that its Distinctive Advertising is comprised of "the prominent use of a distinctive purple color, the use of particular accent colors (e.g., teal and orange) and photos, . . . [and the] use of purple, white, and accent color combinations in words and phrases in the ad headlines." *Id.* ¶ 61.

Prior to 2019, Northwell advertisements featured a logo with blue letters and multicolored arrows on a white background:

 

*Id.* ¶ 42. Beginning in 2021, Northwell's advertisements changed. *Id.* ¶ 43, Ex. A. In the last few years, the logo in some advertisements[2] used white letters and arrows on a purple background:

---

[2] Northwell's logo on its website continues to feature blue letters and multicolored arrows on a white background, meaning its updated logo is not uniform across all branding. Compl. ¶ 55.

 

*Id.* Ex. A at 5–6.  NYU Langone alleges that these Northwell ads and other examples included in the Complaint are confusingly similar to NYU Langone's Distinctive Advertising and are intended to trade off the good will and reputation of NYU Langone following its expansion into Long Island.  *Id.* ¶ 43.

The Allegedly False Advertising

NYU Langone takes particular exception to one specific Northwell advertisement from early 2023; that ad stated that Northwell's Lenox Hill Hospital "is NYC's only hospital in the Nation's Top 50" and "offer[s] the best care in Manhattan."  *Id.* ¶¶ 49, 52.  This advertisement is based on rankings from Healthgrades and includes the Healthgrades logo directly underneath the claim.  *Id.*  NYU Langone questions Healthgrades' rating methodology because it allegedly lacks transparency and relies on inaccurate and incomplete reporting.  *Id.* ¶ 52.  NYU Langone further alleges that the claim is false or misleading because U.S. News & World Report ranked NYU Langone "#1 in New York State and in the New York City Metro area" in its "Best Hospitals Honor Roll."  *Id.*  Not surprising, NYU Langone views U.S. News' ranking system for hospitals to be superior to that of Healthgrades.  *Id.*

Procedural History

In June 2023, NYU Langone sued, alleging that Northwell copied its advertising and marketing campaigns.  Compl., Dkt. 1.  NYU Langone further alleged that Northwell engaged in

4

unfair competition, false advertising, and deceptive practices under both federal and state law. *Id.* Northwell moved to dismiss the Complaint for failure to state a claim, Mot., Dkts. 26–27; NYU Langone responded to the motion to dismiss rather than amending its Complaint. *See* Dkt. 30.

## DISCUSSION

### I. Motion to Dismiss Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### II. The Complaint Does Not Adequately Allege Trade Dress Infringement

NYU Langone brings a claim for trade dress infringement in violation of the Lanham Act (Count I). The relevant section of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), provides a cause of action against

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any . . . false or misleading description of fact, or false or

> misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

Infringement of "trade dress," which "encompasses the overall design and appearance" of a product or advertisement that is "identifiable to consumers," is actionable. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001). Trade dress is the "total image" as "defined by its overall composition and design, including size, shape, color, texture, and graphics." *Caliko, SA v. Finn & Emma, LLC*, No. 21-CV-3849 (VEC), 2022 WL 596072, at *10 (S.D.N.Y. Feb. 28, 2022) (citation omitted). NYU Langone also brings a claim for trade dress infringement under New York common law (Count VI), and that claim is evaluated using the same standards as apply to the Lanham Act claim. *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 187 (S.D.N.Y. 2022); *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 448 & n.2 (S.D.N.Y. 2011).

To state a claim for trade dress infringement, a plaintiff must first clearly articulate the design or combination of features that make up the trade dress. *Caliko*, 2022 WL 596072, at *10. The articulation must provide a "precise expression of the character and scope of the claimed trade dress." *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 46 (2d Cir. 2018) (citation omitted). After satisfying that threshold pleading requirement, the plaintiff must allege facts from which the Court can plausibly infer that (1) the trade dress has acquired secondary meaning, (2) the trade dress is not functional, and (3) there exists a likelihood of confusion between the source of the parties' products or services. *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-CV-7592 (VEC), 2019 WL 2023766, at *5–6 (S.D.N.Y. May 8, 2019)

Articulating a clear and specific trade dress is imperative because courts cannot "shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves

protection." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). An inability to explain to the Court which aspects of the design merit protection could indicate that the trade dress is improperly general and that the plaintiff "seeks protection for an unprotectable style, theme or idea." *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 276 (S.D.N.Y. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001)). Courts routinely dismiss claims that fail to identify specifically the trade dress, without considering the remaining elements of the cause of action. *See, e.g.*, *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-CV-07899 (PAC), 2022 WL 4109721, at *4 (S.D.N.Y. Sept. 8, 2022) (dismissing complaint that described product, *inter alia*, as a helmet that "substantially" curves at the top and sits on a "very roughly flattish helmet shell base"); *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 21-CV-7712 (VEC), 2022 WL 3227861, at *2 (S.D.N.Y. Aug. 10, 2022), *partially vacated on other grounds*, No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024) (dismissing the complaint because trade dress features were unclear and "[t]he indefinite, high-level description in the Complaint is a far cry from a description of a stable, unvarying list of distinct design features that is required"); *Caliko*, 2022 WL 596072, at *11 (dismissing complaint with a laundry list of elements including that the rocking chair had "natural simplified design elements," "minimal components," and a "distinct shape" to its legs).

Trade dress descriptions with too many possible combinations are not specific enough to state a claim. *See Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) ("The lack of objective metrics, combined with the multiplicity of possible combinations of optional features, makes it difficult to discern in [plaintiff]'s description a single distinctive look."); *see also Eliya*, 749 F. App'x at 47 (affirming dismissal of complaint with a "laundry list" of elements that described shoes with different color options, strap options, open- or closed-toe designs, and either horizontal or vertical grooves). Plaintiffs who file initially overbroad

7

complaints can sometimes cure the deficiency by amending the complaint to include a more granular list of design features. *Compare NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, No. 20-CV-8389 (JGK), 2021 WL 3038497, at *6 (S.D.N.Y. July 16, 2021) (granting first motion to dismiss because the plaintiff "identifie[d] the general elements which constitute its alleged trade dress" but did "not adequately describe the specific elements") *with NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, No. 20-CV-8389 (JGK), 2022 WL 2110551, at *3 (S.D.N.Y. June 10, 2022) (denying second motion to dismiss because plaintiff's amended complaint alleged seven specific and granular elements constituting its trade dress); *see also Dana Braun, Inc. v. SML Sport Ltd.*, No. 03-CV-6405 (BSJ), 2003 WL 22832265, at *12 (S.D.N.Y. Nov. 25, 2003) (plaintiff adequately alleged trade dress in describing catalog covers consisting of "printed skirts and color coordinated sweaters, displayed with the SARAH ARIZONA mark in a block, capital letter, open-R typeface, with spaces between the letters horizontally across the middle of the model wearing the skirt and sweater").

Here, NYU Langone's allegations describing its trade dress are confusing and expansive. The Complaint provides a laundry list of elements, some introduced by "*e.g.*" and some connected by "or," that encompasses such a wide variety of features that it would be difficult for competitors to know whether their advertisement falls within the trade dress. NYU Langone defines its trade dress as follows:

> the prominent use of a distinctive purple color, the use of particular accent colors (*e.g.*, teal and orange) and photos, specific font types, colors and headline styles (*i.e.*, all cap sans serif white headlines, as well as white font with certain words and phrases emphasized in the same or similar accent colors), use of purple, white, and accent color combinations in words and phrases in the ad headlines, and specific layouts in terms of placement and use of accent colors, all of which create a distinctive look and feel.

Compl. ¶ 61. NYU Langone includes in the Complaint photographs of the allegedly distinct advertising; the photographs vividly illustrate how features such as font, color, and layout vary

across ads.³  Even among ads that are predominantly purple, the shade of purple varies; some have all cap white writing; some have all white sentence case writing; and some have a mix of white and other color writing:

 

Compl., Ex. A at 1.  Others are not predominantly purple and instead are mostly teal or orange with just a splash of purple:

---

³ The single consistent aspect that the Court can discern is that the font is consistently sans serif.

 

Compl., Ex. A at 2, 7. And finally, some are split between photos and text, with the text varying in color and case and with the split sometimes being vertical and sometimes horizontal:

 

Compl., Ex. A at 10.

NYU Langone contends in its memorandum that it has "pled an overall distinctive look and feel comprised of unique color combinations with certain fonts, colors, and headline styles." NYU Mem. at 7. But the Court cannot ascertain specific fonts, colors, or headline styles from

10

NYU Langone's description of its trade dress. As to fonts, the description says that the advertising uses "specific font types" but does not state what those font types are (other than sans serif).[4] Compl. ¶ 61. The Complaint describes "categories of features" instead of articulating the features themselves. *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (citation omitted). For colors, NYU Langone alleges that the advertising uses "particular accent colors (*e.g.*, teal and orange)." Compl. ¶ 61. Stating that teal and orange are examples of a larger unspecified universe of accent colors, instead of the only two possible accent colors, is vague and overbroad. Finally, the Complaint states that the trade dress contains "headline styles (*i.e.*, all cap sans serif white headlines, as well as white font with certain words and phrases emphasized in the same or similar accent colors)." *Id.* This parenthetical explanation of the headline styles is again confusing; it seems to indicate that the headline could be all cap sans serif white, it could be a different all-white font and typeface, or it could be a mix of colors in a different font and typeface.

      The Court would have expected that, if possible, NYU Langone would have taken the opportunity to shore up the allegations of the Complaint upon reading Northwell's motion to dismiss; although it failed to do so, the Court cannot conclude that amendment would be futile. Although the current description of the trade dress is too general, contains too many "or" connectors and "for example" phrases, and overall encompasses too many possible permutations and combinations to constitute a singular distinct trade dress, there could be a subset of the current description that is actionable. Therefore, Northwell's motion to dismiss Counts I and VI is granted, but the claims are dismissed without prejudice.

---

[4] There are, of course, many popular sans serif fonts, including, to name just a few, Helvetica, Proxima Nova, Futura, Public Sans, and Verdana.

### III. The Complaint Does Not Adequately Allege Unfair Competition and False Designation of Origin

NYU Langone also brings claims for unfair competition and false designation of origin under the Lanham Act (Count II) and New York common law unfair competition (Count VII). These claims rise and fall with the claim for trade dress infringement under the Lanham Act. *See CDC Newburgh Inc. v. STM Bags, LLC*, No. 22-CV-1597 (NSR), 2023 WL 6066136, at *13 (S.D.N.Y. Sept. 18, 2023) (New York common law claims of unfair competition are "virtually identical" to the standard under the Lanham Act, except that New York law requires an additional showing of bad faith); *Thursday LLC v. DNVB, Inc.*, No. 20-CV-9142 (AKH), 2021 WL 2689061, at *4 (S.D.N.Y. June 29, 2021) (federal unfair competition and false designation claims are evaluated using the same standards as trademark infringement).

For all of the reasons NYU Langone has failed adequately to allege a distinctive trade dress, Counts II and VII also fail to state a claim. Those counts are, therefore, dismissed without prejudice.

### IV. The Complaint Does Not Adequately Allege False Advertising Claims Under Federal or New York State Law

NYU Langone brings false advertising claims under the Lanham Act and under NYGBL § 350 (Counts III and V).

The Lanham Act creates liability for a "false or misleading description of fact[] or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To state a claim under this provision, a plaintiff must allege that the defendant's advertisement was "(1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury

12

to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

To satisfy the falsity element, the plaintiff must allege that the defendant's advertising is "literally false" or is impliedly false because it is "likely to mislead or confuse customers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007). Upon sufficient allegations that a statement is literally false, consumer deception is presumed. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 638 (S.D.N.Y. 2018). To state a claim under the "impliedly false" theory, the plaintiff must allege that consumers were misled or confused and "*offer facts* to support that claim." *Id.* at 639 (emphasis in original) (citation omitted).

In determining falsity, context of the statement can be determinative. At issue in *Avis Rent a Car System, Inc. v. Hertz Corp.*, 782 F. 2d 381, 384 (2d Cir. 1986), for example, was an advertisement in which Hertz stated that it had "more new cars than Avis has cars." That statement was literally false because, in total, Avis owned more cars than Hertz owned new cars. *Id.* at 383–85. That said, many of Avis's cars were not available for rent, so it was true that Hertz had more new cars than Avis had cars *available to rent*. *Id.* at 384–85. Adding that context, which was obvious from other references in the advertisement, the statement became true and, therefore, not actionable. *Id.* Courts may also look to the "visual images" to assess whether an advertisement is literally false. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001).

NYU Langone claims that two statements in Northwell's marketing materials constitute false advertising: (1) "Lenox Hill is NYC's only hospital in the Nation's Top 50," and (2) Northwell "offer[s] the best care in Manhattan." Compl. ¶¶ 49, 52, 82–83. The advertisement in question expressly cites to America's 50 Best Hospitals rating by Healthgrades as the source of the "Top 50" rating:

13



Compl. ¶ 49.[5]

The statement that Lenox Hill is the only NYC hospital in the Nation's Top 50 is not literally false because Northwell cited the Healthgrades rating. *See* Compl. ¶ 49, *see also* ¶ 52 (NYU Langone acknowledges the Healthgrades rating and does not allege that Northwell's claim misrepresented its Healthgrades rating). NYU Langone questions Healthgrades' underlying rating methodology, but that does not render the claim that Lenox Hill was the only NYC hospital rated in the Top 50 in that particular list false. *See Express Gold Cash, Inc. v. Beyond 79, LLC*, No. 18-CV-837 (EAW), 2019 WL 4394567, at *6 (W.D.N.Y. Sept. 13, 2019) (no false statement where Defendant claimed it was "ranked #1 by NBC's Today Show" even though ranking methodology was potentially flawed). Taking the visual image of the clearly cited Healthgrades rating into account, the representation that Lenox Hill is the only hospital in the top 50 is not literally false.

---

[5] Northwell notes that this advertisement was a half-page print advertisement, *see* Compl. ¶ 49, which means it was larger and easier to read than it is in the Complaint or in this Opinion. Def. Reply at 7.

NYU Langone has also not adequately alleged that the advertisement touting Lenox Hill's top 50 ranking is misleading. To plead an impliedly false statement, NYU Langone must allege facts to support the conclusion that consumers were misled or confused by the advertisement. *Lokai*, 306 F. Supp. 3d at 638–39. It has not done so. The only allegation in the Complaint related to confusion from this advertisement, and the only allegation upon which NYU Langone relies in its opposition memorandum, is that "Northwell's false or misleading statements actually deceived or have the tendency to deceive a substantial segment of consumers." Compl. ¶ 84; Def. Mem. at 21. While proof of confusion is not necessary at the pleading stage, factual allegations that would allow the Court plausibly to infer that the advertisement caused confusion are. NYU Langone's single conclusory sentence is insufficient.

Finally, the statement that Lenox Hill Hospital "offer[s] the best care in Manhattan," Compl. ¶ 49, is a subjective statement that, as a matter of law, cannot be proven true or false and is not misleading. *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022) (plaintiffs cannot state a false advertising claim based on "subjective statements of opinion" because they "cannot be proven false"). It is well settled that advertising goods or services as the "best" in the industry is "nonactionable puffery." *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 542 (S.D.N.Y. 2018).

The Complaint also fails to state a claim of false advertising under the NYGBL § 350. Under state law, "a disclaimer or similar clarifying language" can defeat a claim of false advertising as a matter of law. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). That is the case here, where Northwell clarified its statement by citing to the source of its claim – the Healthgrades rating. And as to its claim that Lenox Hill Hospital offers the best care in Manhattan: like federal law, puffery is not actionable under New York law. *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 347 (S.D.N.Y. 2020).

15

Amendment of the false advertising claims would be futile because no reasonable jury could conclude that consumers were misled or confused by a Northwell advertisement in which it bragged about Lenox Hill's Healthgrades rating and boasted that it offers the "best" care in the city. *See, e.g.*, *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 07-CV-0194 (TLM), 2011 WL 13228167, at *15 (D. Conn. Jan. 19, 2011) (defendant's statement that it was the "Leading Online Retailer for Indian Entertainment Products" per a cited third-party study was, as a matter of law, neither false nor misleading). Consumers are familiar with this common type of advertising, in which businesses tout that they are the best according to some newspaper, magazine, blog, Yelp or Google review, poll, or other rating system. Indeed, the Complaint alleges that NYU Langone itself advertises in this very way — by calling itself the "#1" or the "best" hospital in New York and citing the magazine or organization that bestowed the rating:



Compl., Ex. A at 1. It can be true simultaneously that Healthgrades ranked Lenox Hill Hospital as the best hospital in New York and that U.S. News ranked NYU Langone as the best hospital in New York. The statements are not mutually exclusive, neither statement is false, and neither causes consumer confusion.

V. **The Complaint Does Not State a Claim for Deceptive Acts and Practices Under New York State Law**

NYU Langone's final claim is brought pursuant to NYGBL § 349 (Count IV). NYGBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To state a claim pursuant to that law, a plaintiff must allege facts from which the Court can plausibly infer that the defendant engaged in (1) consumer-oriented conduct that was (2) materially misleading and that (3) the plaintiff suffered an injury as a result. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023).

NYU Langone's claim is premised on the same facts as its trade dress infringement claim. *See* Compl. ¶¶ 90–96 (discussing Northwell's use of allegedly similar advertising as the basis for the deception). District courts in the Second Circuit lack consensus over whether trademark or trade dress infringement claims are viable under § 349. *See Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 58 (S.D.N.Y. 2015) (listing cases). The majority view, adopted by this Court, is that "trademark infringement claims are not cognizable under . . . § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Caliko*, 2022 WL 596072, at *13 (citation omitted).

In addition to the previously-described shortcomings of NYU Langone's trade dress allegations, this claim also suffers from Plaintiff's failure to plead any facts from which the Court can infer that the harm from the alleged infringement "constitutes anything more than the ordinary harm that typically accompanies trademark infringement." *Pulse Creations*, 154 F. Supp. 3d at 59; *see also* Compl. ¶ 95 (conclusory allegation that "Northwell's conduct has resulted, or is likely to result, in consumer injury or harm to the public interest"). NYU Langone argues that "claims directed to the public's choice of healthcare necessarily implicate the public

17

interest." NYU Mem. at 25. Even if true, "implicating" the public interest does not equate to "injuring" the public interest. *See Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 446 (S.D.N.Y. 2020) (NYGBL claims for deceptive practices require allegations of "significant ramifications for the public at large" (citation omitted)). Accordingly, NYU Langone has failed to state a claim under § 349.

## CONCLUSION

For the foregoing reasons, Northwell's motion to dismiss the Complaint is GRANTED. Counts II and V, asserting claims for false advertising under the Lanham Act and the NYGBL, are dismissed with prejudice for failure to state a claim. The remaining claims are dismissed without prejudice to NYU Langone moving for leave to file an amended complaint. Any motion for leave must be made not later than **Friday, March 22, 2024,** and must include a redlined version of the proposed Amended Complaint.

The Clerk of Court is respectfully requested to terminate the open motion at Dkt. 26.

**SO ORDERED.**

Date:  March 1, 2024                              **VALERIE CAPRONI**
       **New York, New York**                     **United States District Judge**