USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
NYU LANGONE HEALTH SYSTEM and            :
NYU LANGONE HOSPITALS,                         :
                                                                          :
                                                                          :
                              Plaintiffs,             :         23-CV-5032 (VEC)
            -against-                                         :
                                                                          :         SEALED OPINION AND
                                                                          :              ORDER[1]
NORTHWELL HEALTH, INC.,                        :
                                                                          :
                                                                          :
                              Defendant.          :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       This is the second attempt by Plaintiffs NYU Langone Health System and NYU Langone Hospitals (together, "NYU Langone") to allege adequately that Northwell Health, Inc. ("Northwell") copied NYU Langone's advertising trade dress to trade off its good will and reputation. In its initial complaint, Dkt. 1, NYU Langone brought claims under the Lanham Act, the New York General Business Law ("NYGBL"), and New York common law, all of which Northwell moved to dismiss for failure to state a claim. The Court granted the motion in part with prejudice and in part without. NYU Langone moved for leave to file an amended complaint, in which it re-pleads its claims for trade dress infringement and adds new claims for trademark infringement. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART NYU Langone's motion for leave to amend.

---

[1] Because this Opinion and Order cites portions of the Proposed Amended Complaint that were redacted in the public filing, it will be filed entirely under seal with viewing limited to the parties. The Court notes that, although it has previously approved filing certain materials under seal in this case, the Court is skeptical that all the material redacted from the Proposed Amended Complaint and referenced by the Court is information that overcomes the presumption of public access. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). Accordingly, Northwell must show cause by no later than October 4, 2024, why any portion of this Opinion & Order should remain sealed given the *Lugosch* presumption of access.

## BACKGROUND[2]

The Court assumes familiarity with the background of this case, which is set forth fully in the Court's March 1, 2024, opinion granting Northwell's motion to dismiss. *See* Opinion, Dkt. 55 ("MTD Opinion"). In brief, NYU Langone and Northwell are not-for-profit health systems that operate in New York and advertise to the same market. PAC,[3] Dkt. 59 ¶¶ 3, 5, 43, 49. Although NYU Langone is headquartered in Manhattan and Northwell is headquartered in Long Island, NYU Langone recently increased the number of physicians it has in Nassau and Suffolk Counties. *Id.* ¶¶ 3, 5, 43, 47. Following NYU Langone's push into the Long Island market, Northwell changed the style of its advertisements. *Id.* ¶¶ 42, 44, 48, 50 (comparing old advertising style with new style). NYU Langone alleges that Northwell's new advertisements infringe NYU Langone's trade dress to create customer confusion and draw would-be NYU Langone patients to Northwell's nearby locations. *Id.* ¶ 49.

In June 2023, NYU Langone sued, alleging that Northwell copied its advertising and marketing campaigns. Compl., Dkt. 1. It brought six claims: (1) trade dress infringement under 15 U.S.C. § 1125(a)(1)(A); (2) unfair competition and false designation of origin under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); (4) deceptive acts and practices under NYGBL § 349; (5) false advertising under NYGBL § 350; (5) common law trade dress infringement; and (6) common law unfair competition. *Id.* ¶¶ 60–126. Northwell

---

[2] In setting out the background facts, the Court did not rely on evidence Northwell submitted as exhibits to the Barkin Declaration. Decl., Dkt. 65. On a motion for leave to amend, courts review whether the amended complaint would survive a motion to dismiss, and applying that standard, the Court cannot rely on evidence outside of the pleadings. *See Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, No. 19-CV-10769 (LJL), 2021 WL 6211686, at *2 (S.D.N.Y. Apr. 14, 2021) (refusing to consider evidence outside the pleadings on Rule 15 motion).

[3] References to the "PAC" are to the Proposed Amended Complaint. NYU Langone filed the PAC under seal at Dkt. 59 and publicly with redactions at Dkt. 61. Except where noted otherwise, the Court draws the background facts from the Proposed Amended Complaint and assumes the truth of all well-pled allegations.

moved to dismiss the Complaint for failure to state a claim.  Mot., Dkts. 26–27.  The Court granted Northwell's motion and dismissed the claims for false advertising under 15 U.S.C. § 1125(a)(1)(B) and NYGBL § 350 with prejudice[4] and dismissed the remaining claims without prejudice.  *See* MTD Opinion at 18.  The Court allowed NYU Langone, by no later than March 22, 2024, to move for leave to amend the complaint with respect to the claims dismissed without prejudice.  *Id.*  Plaintiff then filed the instant motion and a Proposed Amended Complaint ("PAC") that restates its claims for trade dress infringement and brings new claims for trademark infringement.[5]  Mot., Dkts. 59–62.  Northwell opposed the motion for leave to amend, and NYU Langone replied in support.  Mem., Dkts. 64, 70.

Trade Dress Allegations

The PAC re-pleads trade dress infringement and related claims, such as unfair competition and false designation of origin under the Lanham Act, common law trade dress infringement, and common law unfair competition.  The PAC contains a new articulation of NYU Langone's trade dress and additional facts in support of the claims.  NYU Langone now alleges that its trade dress includes: (a) a solid, single background color of purple, (b) headlines using white Benton Sans font lettering, (c) stacking of headlines with left alignment, and (d) periods as punctuation.  PAC ¶ 24.  NYU Langone further clarifies that the shade of purple used in its trade dress is PMS 2597 on the Pantone scale or a similar shade if the advertising media requires a slightly different shade to achieve a consistent appearance to customers.  *Id.*  Many of NYU Langone's digital, print, billboard and other media advertisements sport this trade dress:

---

[4]   In the MTD Opinion, the Court dismissed the claims for false advertising under the Lanham Act and the NYGBL.  The Court inadvertently stated that it dismissed "Counts II and V" with prejudice, but the counts alleging false advertising were Counts III and V.  The Court intended to dismiss Counts III and V with prejudice.

[5]   The Court dismissed the claim for deceptive acts and practices under NYGBL § 349 without prejudice, but NYU Langone chose not to re-plead it.  *See* NYU Mem., Dkt. 62 at 4 n.4 ("NYU Langone does not seek to re-plead its claim for deceptive trade practices pursuant to NYGBL § 349 (Count IV of the Original Complaint).").

  

*Id.* ¶¶ 25–26. NYU Langone uses these advertisements across multiple channels, including social media platforms; its social media platforms collectively have more than 300,000 followers. *Id.* ¶¶ 27–28. It has spent hundreds of millions of dollars on its marketing campaigns using the alleged trade dress. *Id.* ¶ 30.

The PAC also adds new allegations about Northwell's motivation and intention to copy NYU Langone's advertising. In 2019, Northwell noted that there had "been a decline in volume" at one of its Long Island facilities and partially attributed the reduced volume to "increased marketing spend, specifically from NYU Winthrop, [which] has created an intensely competitive environment for the hospital." *Id.* ¶ 44. It stated its next steps were to "[h]eavy-up on media surrounding Garden City/Mineola (NYU Winthrop territory)." *Id.* A couple years later, in 2021, Northwell internally acknowledged that NYU Winthrop bested a Northwell hospital by having the "best reputation/image" and being the "most preferred" across Nassau County. *Id.* ¶ 46. Its employees commented that Northwell needed to "go head-to-head against Manhattan-based health systems that are increasing presence in the local market." *Id.*

Northwell also recognized that NYU Langone had "kept a consistent look and feel from previous efforts with their purple color scheme and bold fonts." *Id*. ¶ 34. In emails about advertisements, Northwell employees discussed that certain draft Northwell ads had a

4

"background purple color [that was] very NYU-ish," that another "legitimately look[ed] like an NYU ad," and that a third "screams NYU." *Id.* ¶¶ 35–37. Despite the acknowledgement that certain colors and styles had the look and feel of an NYU ad, Northwell still ran ads with a purple background and white lettering:






*Id.* Ex. C at 2–5 (showing examples of the allegedly copied ads). In November 2022, Northwell employees discussed its subway advertising that was scheduled to hit the market in mid-December; an employee wrote in the chain, "Merry Christmas, ya filthy animal NYU." *Id.* ¶ 46.

In January 2023, Northwell included an image of an NYU Langone banner as an advertising example, and it ran a substantially similar banner in July 2023. *Id.* ¶¶ 55, 56.

Overall, the PAC contains numerous allegations that Northwell attempted to copy NYU Langone's advertising to steer potential patients away from NYU Langone's hospitals and towards Northwell's.

New Trademark Allegations

In addition to bolstering its trade dress claims, NYU Langone alleges new trademark claims that were not included in the initial complaint. The PAC brings claims for trademark infringement, unfair competition, and false designation under 15 U.S.C. § 1125(a)(1)(A), as well as trademark dilution under NYGBL § 360-l, common law trademark infringement, and common law unfair competition. To support these trademark-related claims, the PAC alleges that NYU Langone has an unregistered trademark[6] in "the color purple" in "the field of healthcare services in New York." *Id.* ¶ 9. NYU has used the color purple in connection with its healthcare services for years and in a variety of contexts. *Id.* ¶¶ 10–18 (listing examples of its use of purple, including street signs, scrubs, website pages, and taxi ads). In 2023, the Empire State Building was lit in purple in honor of NYU, and the Empire State Building's X account (formerly Twitter) wrote, "Proud to be featured here with our neighbor, NYU Langone." *Id.* ¶ 19.

According to the PAC, Northwell acknowledged that NYU Langone had a distinctive use of the color purple. In 2014, Northwell conducted market research, through a branding agency, which resulted in the conclusion that NYU Langone "owns purple." *Id.* ¶ 32. Over the last decade, various Northwell employees have commented that NYU has a consistent "purple color scheme," that ads had a "purple hue looking like NYU" or "background color purple [that was]

---

[6] NYU Langone alleged that it owns some registered trademarks that include purple designs, *see* PAC ¶ 22 (trademark of white cross in purple circle), but it has not registered a trademark in the color purple itself.

very NYU-ish," and that various purple advertisements "scream[ed] NYU." *Id.* ¶¶ 34–37. As shown in the photos above, Northwell ran many ads featuring purple, despite these acknowledgements that the color may be associated with NYU Langone.

## DISCUSSION

### I. Standard for Leave to Amend

Courts must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The permissive standard reflects the "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011). That said, leave may be denied for good reason, "including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).

A proposed amended complaint is futile if it could not withstand a motion to dismiss. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165 (2d Cir. 2015). The party opposing the amendment has the burden of demonstrating a proposed amendment's futility. *See United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018). In determining whether a proposed amendment is futile, the Court accepts all factual allegations in the proposed amended complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted). The Court is not required, however, "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### II. Plaintiff May File an Amended Complaint Alleging Trade Dress Infringement

NYU Langone wishes to re-plead its claim for trade dress infringement in violation of the Lanham Act (now, Count II). NYU Langone also wishes to bring claims for unfair competition

and false designation of origin under the Lanham Act (combined into Count II) and common law trade dress infringement and unfair competition (now, Counts V and VII). The Court evaluates the proposed claims in Counts II, V, and VII (the "Trade Dress Claims") collectively.

To state a claim for trade dress infringement under the relevant section of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), a plaintiff must first clearly articulate the design or combination of features that make up the trade dress. *Caliko, SA v. Finn & Emma, LLC*, No. 21-CV-3849 (VEC), 2022 WL 596072, at *10 (S.D.N.Y. Feb. 28, 2022). After satisfying that threshold pleading requirement, the plaintiff must allege facts from which the Court can plausibly infer that (1) the trade dress has acquired secondary meaning, (2) the trade dress is not functional, and (3) there exists a likelihood of confusion between the source of the parties' products or services. *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-CV-7592 (VEC), 2019 WL 2023766, at *5–6 (S.D.N.Y. May 8, 2019). The other Lanham Act claims for unfair competition and false designation of origin rise and fall with the trade dress infringement claim. *Thursday LLC v. DNVB, Inc.*, No. 20-CV-9142 (AKH), 2021 WL 2689061, at *4 (S.D.N.Y. June 29, 2021). Claims for trade dress infringement and unfair competition under New York common law generally track the federal standard. *See Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 187–88 (S.D.N.Y. 2022) (standard for common law unfair competition is the same, plus the requirement of bad faith); *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 448 & n.2 (S.D.N.Y. 2011) (standard for common law infringement is identical to federal standard).

In the Court's MTD Opinion, it noted that the initial complaint's trade dress allegations were "confusing and expansive" because they contained a laundry list of elements, "some introduced by '*e.g.*' and some connected by 'or.'" MTD Opinion at 8. It also noted that the trade dress contained backgrounds of varying shades of purple and writing in different fonts and colors. *Id.* at 8–9. The PAC solves the problems in the original complaint by clearly articulating

8

four elements that make up the trade dress: (a) a solid, single background color of purple in shade PMS 2597 on the Pantone scale or a similar shade if the advertising media requires a slightly different shade to achieve a consistent appearance to customers, (b) headlines using white Benton Sans font lettering, (c) stacking of headlines with left alignment, and (d) periods as punctuation.  PAC ¶ 24.  This articulation of the trade dress is a clear and finite list of items that compromise the trade dress, and it is narrowed by a specific shade of purple and a specific white font.

      Northwell argues that NYU Langone still has not adequately alleged its trade dress because, as alleged, it is both under and overinclusive.  Northwell Mem., Dkt. 64 at 11–12.  It argues the trade dress is underinclusive because Northwell could copy NYU Langone almost entirely but simply stop using periods to avoid infringing its trade dress.  *Id.*  In its view, the trade dress is also overinclusive because it includes basic elements of printed English, such as left-alignment and punctuation.  *Id.*  Northwell nitpicks a couple specific elements of the trade dress, but the "focus" of the inquiry is the "combination of elements."  *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 283 F. Supp. 3d 182, 186 (S.D.N.Y. 2018).  It is true that using periods as punctuation, in isolation, is not protectable trade dress, but the use of a specific purple background, white Benton Sans font, left alignment, and periods makes up a narrow and clearly-defined subset of a style of advertisement.  The PAC contains adequate allegations to identify the trade dress with specificity.  *See, e.g.*, *NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, No. 20-CV-8389 (JGK), 2022 WL 2110551, at *3 (S.D.N.Y. June 10, 2022) (denying second motion to dismiss because plaintiff's amended complaint alleged seven specific and granular elements constituting its trade dress); *Dana Braun, Inc. v. SML Sport Ltd.*, No. 03-CV-6405 (BSJ), 2003 WL 22832265, at *12 (S.D.N.Y. Nov. 25, 2003) (plaintiff adequately alleged trade dress in describing catalog covers consisting of "printed skirts and color coordinated sweaters, displayed

with the SARAH ARIZONA mark in a block, capital letter, open-R typeface, with spaces between the letters horizontally across the middle of the model wearing the skirt and sweater").

The question then becomes whether NYU Langone has adequately alleged facts from which the Court can plausibly infer the other elements of trade dress infringement — that the trade dress is nonfunctional and has acquired a secondary meaning, and that there exists a likelihood of confusion between the trade dress and the allegedly copied materials. These remaining factors are typically resolved at summary judgment. *See GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 278, 282, 285 (S.D.N.Y. 2018) (explaining that resolving questions of functionality, secondary meaning, and likelihood of confusion at the pleading stage is "premature").

### A. NYU Langone has alleged that its trade dress is not functional

In a civil action for trade dress infringement, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). The functionality doctrine "protects competitors against a disadvantage (unrelated to recognition or reputation) that trademark protection might otherwise impose, namely, their inability reasonably to replicate important non-reputation-related product features." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 169 (1995). Trade dress may have "utilitarian" or "aesthetic" functionality. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012). Trade dress has utilitarian functionality when it is essential to the use or purpose of the article or if it affects cost or quality, permitting the article to be manufactured at a lower cost or improving the operation of the goods. *Id.* at 219. Trade dress has aesthetic functionality if the design otherwise would put competitors at a "significant non-reputation-related disadvantage." *Id.* at 220.

10

The PAC alleges that the trade dress stems from "creative and distinctive advertising design," that the specific elements of the trade dress are "not essential to the purpose of the advertising," and that the specific color and font choices do "not affect cost or quality" of the advertising nor are they "competitively necessary."  PAC ¶ 24.  It alleges that NYU Langone chose a specific shade of purple on the Pantone scale to achieve a "consistent appearance to customers."  Id.  These allegations are sufficient to plead that NYU Langone's trade dress is nonfunctional because the trade dress is not required to make the advertisements readable, does not save NYU Langone money, and does not put other advertisers at a significant disadvantage.  Instead, the PAC alleges that NYU Langone chose the elements of its trade dress based on creative design and a desire to have a consistent presentation to consumers.

Northwell is incorrect that the PAC contains only a "glib recitation of the definition of functionality," Northwell Mem. at 7, and that the trade dress is "obvious[ly]" functional because it creates an eye-catching and readily legible advertisement, id. at 8.  NYU Langone tracks the definition of functionality where needed — to plead that the use of its trade dress does not cut its costs — but expands on the definition to note that it chose its trade dress as a creative decision and to keep a consistent feel to consumers.  These allegations are more than conclusory assertions.  Further, it is not obviously functional to use Pantone shade PMS 2597 as a background color with white Benton Sans font lettering.  Northwell's comparison to the trade dress in *Laurel Rd. Bank v. CommonBond, Inc*., No. 18-CV-7797 (ER), 2019 WL 1034188 (S.D.N.Y. Mar. 5, 2019), is misplaced.  There, the plaintiff sought trade dress protection for the use of "a dark background," lettering in "light-colored, sans serif font," and "center or left-side alignment."  *Id.* at *1.  The Court rejected that trade dress because the "high level of generality . . . rather than [choosing] specific colors" curtailed the feasibility of alternative designs with similar readability.  *Id.* at *6.  Of course, barring all competitors from using dark

11

backgrounds with light-colored writing would confer a functional, rather than reputational, advantage. In this case, however, NYU Langone has chosen specific colors and fonts. There is no functional advantage to using one specific shade of purple; Northwell can use other dark backgrounds, including those in other colors or other shades of purple. Similarly, there is no functional advantage to using Benton Sans font; Northwell can use other legible fonts, including other sans serif fonts. In short, NYU Langone has adequately alleged that its trade dress is nonfunctional.

### B. NYU Langone has alleged that its trade dress has secondary meaning

Trade dress has a secondary meaning if "a consumer immediately associates the dress of the product with its source." *NSI Int'l*, 2022 WL 2110551, at *3 (citation omitted). The Second Circuit has laid out the following non-exclusive factors to determine whether a plaintiff has adequately pled secondary meaning: (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use. *Louboutin*, 696 F.3d at 226. No single factor is determinative, and the plaintiff is not required to allege facts in support of all six factors. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000).

NYU Langone alleges facts in support of half of these factors. As to the first factor — advertising expenditures — it alleges that it has "invested heavily" in its advertising and has spent "hundreds of millions of dollars" on its trade dress. PAC ¶ 30. Northwell criticizes NYU Langone for failing to plead "the amount of funds spent on advertising." Northwell Mem. at 5 (citing *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017)). In *Bubble Genius*, the plaintiff said only that it made a "substantial investment" and gave no indication of what a "substantial" figure was. 239 F. Supp. 3d at 598. NYU Langone gives more detail than

12

that, anchoring its advertising spend in the hundreds of millions.  PAC ¶ 30.  NYU Langone will need to provide a more specific figure, supported by evidence, on a motion for summary judgment, but its allegations are sufficient as to the first factor at the pleading stage.

NYU Langone also alleges the success of its advertisements.  It alleges that it has used its trade dress in "advertising channels in the greater New York metropolitan area, including television and online video, print, billboards, transit, digital banners, digital audio, email, and onsite digital signage." *Id.* ¶ 27.  It also uses its trade dress across NYU's social media platforms on "Facebook, Instagram, X and LinkedIn," which "collectively have more than 300,000 followers. *Id.* ¶ 28.  The advertising campaigns made an impact: a 2021 marketing study showed that the NYU Langone hospital on Long Island was the hospital with the "best reputation/image" and "most preferred" in Nassau County.  *Id.* ¶ 46.

Attempts to plagiarize the trade dress are addressed throughout the entirety of the PAC.  The thrust of the claims is that Northwell saw the success of NYU Langone's advertising and intentionally copied it.  For example, in October 2021, Northwell employees discussed a draft advertisement using a purple similar to NYU Langone's chosen shade and said the "purple screams NYU." *Id.* ¶ 51.  Northwell ran the ad anyway.  *Id.*  In January 2023, Northwell employees used an image of an NYU Langone ad as an example of a possible advertisement; Northwell ran a substantially similar ad a few months later.  *Id.* ¶¶ 55–56.  Other examples of allegedly plagiarized advertisements are compiled in Exhibit C to the PAC.  Accepting these facts as true, NYU Langone has alleged the fifth factor of secondary meaning.  *See Landscape Forms*, 117 F. Supp. 2d at 366 ("[P]lagiaristic behavior is strong evidence of secondary meaning.").

13

In various paragraphs, the PAC touches on two of the remaining factors: unsolicited media coverage and the length of use of its trade dress.[7] *See* PAC ¶¶ 19, 24. For example, it alleges that the Empire State Building shared Plaintiff's trade dress on its X account. *Id.* ¶ 19. It also alleges it has used its trade dress "[s]ince at least 2018." *Id.* ¶ 24. These allegations, however, are not fleshed out. It is unclear if the instances of media coverage described in the complaint were unsolicited and whether the use of the trade dress since 2018 was exclusive use. The Court need not address these two factors at this stage because NYU Langone has sufficiently alleged that it satisfies three other factors. *See NSI Int'l*, 2022 WL 2110551, at *3 ("Courts have found a trade dress claim adequately pleaded where three of these factors were properly alleged.").

### C. NYU Langone has alleged that there is likelihood of confusion between its trade dress and Northwell's advertisements

The likelihood-of-confusion inquiry "turns on whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance into the marketplace of defendant's marks." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 619 (2d Cir. 2008). There must be a probability of confusion, a mere possibility is insufficient. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 121 (2d Cir. 2001). There is another multi-factor test — this time, set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961) — to evaluate this element of trade dress infringement. The *Polaroid* factors are (1) strength of the plaintiff's trade dress; (2) similarity of the trade dresses; (3) proximity of the products in the marketplace; (4) likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the

---

[7] The PAC contains no allegations relating to consumer studies linking the mark to a source, which is the second factor of the relevant test.

14

defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group. *Nat. Organics, Inc. v. Nutraceutical Corp.*, 426 F.3d 576, 578 (2d Cir. 2005).  No one factor is dispositive.  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 124 (2d Cir. 2022).  The Court need not "recite the litany of all eight *Polaroid* factors in each and every case" but must conduct "a deliberate review."  *Nat. Organics*, 426 F.3d at 579.

The Court starts with the similarity of the parties' advertisements.  There are striking similarities.  *Compare* PAC Ex. B *with id.* Ex. C.  Although they are not identical, they are similar enough to cause a double take.  All of Northwell's allegedly copied ads use a purple background that is similar to the shade of purple in NYU Langone's trade dress.  *Id.* Ex. C.  Almost all of Northwell's ads use white lettering, although the fonts used do not appear to be Benton Sans.  *Id.*  Many of them use left alignment, and some use periods.  *Id.*  The similarities are enough to make the parties' advertisements have a similar look and feel.

NYU Langone alleges facts in support of other factors, as well.  There is very close proximity between the parties' services: healthcare in the New York metropolitan area, particularly Manhattan and Long Island.[8]  *See Id.* ¶ 49 ("NYU Langone's and Northwell's healthcare services and facilities are proximate to one another.").  Plaintiff alleges that NYU Langone has received markedly higher ratings from a variety of sources between 2021 and 2023, thus impliedly alleging that the quality of Defendant's product is inferior to Plaintiff's.  *Id.* ¶ 40. It also alleges, at length, Northwell's bad faith.  *Nora Beverages*, 269 F.3d at 124 (explaining that the bad-faith factor looks to whether "the defendant adopted its mark with the intention of

---

[8]   Because the Court concludes that there is already close proximity between the parties' services, it does not consider the fourth factor: the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product).  *See GeigTech*, 352 F. Supp. 3d at 285 ("Where, as here, the parties produce the same product in the same industry, there is no need to 'bridge the gap.'").

capitalizing on plaintiff's reputation and goodwill"). The PAC alleges that Northwell felt threatened by increased competition on Long Island following NYU Langone's expansion into Nassau and Suffolk counties. PAC ¶¶ 44, 47–48. It cites examples of Northwell employees commenting that certain ads looked like NYU Langone ads but Northwell choosing to use them anyway. *See id.* ¶¶ 35–37, 51. It notes that Northwell chose to "[h]eavy-up on media surrounding . . . NYU Winthrop territory." *Id.* ¶ 44. Finally, it alleges examples of Northwell's animus towards NYU Langone. *See Id.* ¶ 46 (employee email saying, "Merry Christmas, ya filthy animal NYU"). Accepting these well-pled allegations as true, this factor weighs heavily in NYU Langone's favor.[9]

Although not specifically related to one of the *Polaroid* factors, NYU Langone alleges that Northwell has admitted that its advertisements were confusingly similar to NYU Langone's trade dress. The PAC contains quotes from employees' emails in which they state that the "background color purple is very NYU-ish," "the second option legitimately looks like an NYU ad," and "that purple screams NYU." *Id.* ¶¶ 35–37.

Taking the *Polaroid* factors in conjunction with allegations of Northwell's admissions, NYU Langone has sufficiently alleged a likelihood of confusion to survive a motion to dismiss.

### D. Amendment of the trade dress claims would cause no undue delay or prejudice

Because amendment of the trade dress claims would not be futile, amendment should be permitted unless there would be undue delay or prejudice to Northwell. The trade dress claims were asserted as part of the initial complaint, and NYU Langone sought to amend the complaint

---

[9] The Court has addressed five of the eight *Polaroid* factors. It reviewed the remaining three — strength of the plaintiff's trade dress, evidence of actual confusion, and the sophistication of the relevant consumer group — and concluded that they are more appropriate for resolution at the summary-judgment stage. These factors require conclusions about buyers' states of mind, a factual question that cannot be resolved on the pleadings alone. *GeigTech*, 352 F. Supp. 3d at 285 ("The remaining factors require a fact-intensive inquiry not suitable for a motion to dismiss.").

16

as to these claims following direction from the Court to do so. The parties have already begun discovery on these claims, although depositions were stayed pending resolution of Northwell's motion to dismiss. *See* Order, Dkt. 48. The parties can pick up where they left off without any unfair prejudice or undue delay. Northwell appears to recognize that amendment as to these claims would cause no harm because it argues undue delay only as to the trademark claims. *See* Northwell Mem. at 13.

The Court is satisfied that NYU Langone has sufficiently alleged its Trade Dress Claims and that amendment would cause no prejudice or delay in this case. Accordingly, NYU Langone's motion to amend as to the Trade Dress Claims is GRANTED.

### III. NYU Langone Is Denied Leave to Amend Its Complaint to Bring New Trademark Claims

NYU Langone also attempts to add trademark claims relating to its use of the color purple associated with its provision of healthcare services in New York. It adds a claim for trademark infringement in violation of the Lanham Act (the new Count I). It also includes claims for unfair competition and false designation of origin under the Lanham Act (combined into Count I), trademark dilution under NYGBL § 360-l (Count III), common law trademark infringement (Count IV), and common law unfair competition (Count VI). The Court evaluates the claims in Counts I, III, IV, and VI (the "Trademark Claims") collectively.

Under the relevant section of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), to allege a trademark infringement claim, a plaintiff must allege that (1) it has either a validly registered or a qualifying unregistered trademark, and that (2) "the defendant's' actions are likely to cause confusion with [that] mark." *Thursday LLC*, 2021 WL 2689061, at *4 (citation omitted). The remaining Trademark Claims all have very similar elements to the federal trademark

17

infringement claim; despite some differences, all require the plaintiff to allege that it has a qualifying mark.[10]

In determining whether an unregistered mark qualifies for protection under the Lanham Act, the "general principles for qualifying a mark for registration under § 2 of the Lanham Act are . . . applicable." *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 516 (S.D.N.Y. 2022), *aff'd*, No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024).  This means that the "mark must be sufficiently distinctive to distinguish the registrant's goods from those of others."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (quotation omitted).  A generic mark is not protectable; a descriptive mark is protectable only if it has acquired a secondary meaning.  *Now-Casting Econ.*, 628 F. Supp. 3d at 516.

A color, at least sometimes, can serve as the basis for a protectable trademark if the color "act[s] as a symbol that distinguishes a firm's goods and identifies their source, without serving any other significant function."  *Qualitex*, 514 U.S. at 166.  That said, courts have held that colors qualify for trademark protection only when limited to specific contexts.  *See, e.g.*, *Louboutin*, 696 F.3d at 225 (holding that plaintiff had protectable red trademark only when on the bottom sole of a shoe); *Louis Vuitton*, 454 F.3d at 115 (holding that plaintiff had protectable mark consisting of color and design, considered together, on a handbag); *Minnesota Mining & Mfg. Co. v. Beautone Specialties, Co.*, 82 F. Supp. 2d 997, 1003 (D. Minn. 2000) (explaining that trademark claims in canary yellow sticky notes could proceed to trial).  In *Louboutin*, for example, the fashion brand had a protectable trademark in a specific lacquered red shade only

---

[10] The elements of federal unfair competition and false designation of origin track the requirements of the Lanham Act trademark infringement claim.  *Thursday LLC*, 2021 WL 2689061, at *4.  Under New York common law, the elements of trademark infringement and unfair competition are the same as those under the Lanham Act, except that New York law requires an additional showing of bad faith.  *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 229 (S.D.N.Y. 2023).  Trademark dilution under the NYGBL § 360-l requires (1) the plaintiff to possess a distinctive mark capable of being diluted, and (2) there to be a likelihood of dilution.  *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 315 (S.D.N.Y. 2019) (citation omitted).

18

when used on the sole of a shoe that had a contrasting color on the adjoining upper portion of the shoe. 696 F.3d at 226–27. Even Louboutin, which makes the iconic red-bottomed shoes, could not extend its color trademark to monochromatic red shoes. *Id.* at 227. It did not even try to trademark the red shade as applied to all shoes or the entire fashion industry.

Despite the hyperbolic allegations in the Complaint, NYU Langone does not, as a matter of law, "own[] purple," PAC ¶ 32, and does not have a qualifying purple mark.[11] As explained, color qualifies for trademark protection when limited to a particular product, portion of product, or other specific use. A trademark cannot encompass all uses of a color spanning an entire industry without creating an unfair monopoly, *see Louboutin*, 696 F.3d at 216, but that is what NYU Langone seeks to do. It asks the Court to accept that it has a trademark in the color purple that applies to signage, website design, social media posts, brochures, scrubs, lighting at fundraising events, and gift store items like t-shirts, teddy bears, sweatshirts, and even pet collars.[12] *See* PAC Ex. A. The expansive application of trademark to the color purple that NYU Langone seeks is unlike any of the examples it cites in its memorandum. It has not alleged that this type of expansive color trademark is protectable at all, let alone that its use of the color purple in all of these contexts has secondary meaning and is not functional.

---

[11] Northwell argues that NYU Langone seeks a trademark broadly in the color purple without specifying a shade. *See* Northwell Mem. at 16. NYU Langone responds that it did specify the shade, PMS 2597, with respect to both its Trade Dress and Trademark Claims. NYU Reply, Dkt. 70 at 11. The Court reads the PAC in the light most favorable to NYU Langone and assumes that it seeks trademark protection only in the Pantone Shade 2597 and confusingly similar shades. Nevertheless, NYU Langone has not stated a claim for trademark protection in that shade of purple.

[12] As to some of the items included in the proposed trademark, like scrubs, the Court questions whether the use of color is functional. *Cf. Qualitex*, 514 U.S. at 169 (explaining that competitors may need to copy the color of a pill to identify the kind of medication). As to others, like gift shop pet collars and teddy bears, the Court questions why NYU Langone would even need a trademark applied to that product and whether any consumer would associate such an item, regardless of the color, with a hospital system.

The PAC does not sufficiently allege the Trademark Claims and, as such, amendment would be futile.[13] *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend where plaintiffs "already had one opportunity to amend their complaint" but did not identify facts or legal theories sufficient to state a claim). NYU Langone's motion to amend as to the Trade Dress Claims is DENIED.

## CONCLUSION

For the foregoing reasons, NYU Langone's motion for leave to amend the complaint is GRANTED IN PART and DENIED IN PART. The PAC sufficiently states the Trade Dress Claims, and filing an amended complaint containing those claims would neither be futile nor cause undue prejudice. The PAC does not sufficiently state the Trademark Claims, and amendment to add those claims would be futile.

As noted above, *supra* note 1, this Opinion and Order will be filed under seal. By not later than **Friday, October 4, 2024**, Northwell must show cause why any portion of this Opinion and Order should remain under seal and submit a version of this opinion with proposed redactions.

By not later than **Friday, October 11, 2024**, NYU Langone must file an amended complaint containing only the Trade Dress Claims. The amended complaint must include as an exhibit a redline showing the changes from the initial complaint.

The Clerk of Court is respectfully directed to file this Opinion and Order under seal, with viewing restricted to the parties and the Court, and to terminate the open motion at Dkt. 60.

**SO ORDERED.**

Date: September 25, 2024  
New York, New York

VALERIE CAPRONI  
United States District Judge

---

[13] Because the Court holds that amendment to add the Trademark Claims would be futile, it need not address whether there NYU Langone failed to act diligently in asserting its trademark claims, *see* Northwell Mem. at 13.