USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
NYU LANGONE HEALTH SYSTEM and :
NYU LANGONE HOSPITALS, :
:
:
Plaintiffs, : 23-CV-5032 (VEC)
-against- :
: OPINION AND ORDER
:
NORTHWELL HEALTH, INC., :
:
:
Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs NYU Langone Health System and NYU Langone Hospitals (together, "NYU Langone") allege that Northwell Health, Inc. ("Northwell") copied NYU Langone's advertising trade dress to trade off its good will and reputation. In its initial complaint, Dkt. 1, NYU Langone brought claims under the Lanham Act, the New York General Business Law ("NYGBL"), and New York common law, all of which Northwell moved to dismiss for failure to state a claim. The Court granted the motion in part with prejudice and in part without. NYU Langone moved for leave to file an amended complaint, in which it attempted again to allege trade dress infringement and added new claims for trademark infringement. The Court granted NYU Langone leave to amend its complaint as to its trade dress infringement claims but denied it leave to add trademark infringement claims. NYU Langone then moved the Court to reconsider the part of its decision that denied it leave to add trademark infringement claims. For the reasons that follow, the Court GRANTS NYU Langone's motion for reconsideration and GRANTS IN PART and DENIES IN PART its motion for leave to amend the complaint as to its trademark claims.

## BACKGROUND

The Court assumes familiarity with the background of this case, which is set forth fully in the Court's March 1, 2024 opinion granting Northwell's motion to dismiss, and the Court's September 25, 2024 opinion granting in part and denying in part NYU Langone's motion for leave to file an amended complaint. *See* Opinion, Dkt. 55 ("MTD Opinion"); Opinion, Dkt. 71 ("Leave Opinion"). In brief, NYU Langone and Northwell are not-for-profit health systems that operate in New York, and NYU Langone alleges that Northwell copied its advertising trade dress and trademark following NYU Langone's push into the Long Island market where Northwell had been dominant. PAC,[1] Dkt. 59 ¶¶ 3, 5, 42–44, 47–50.

In the PAC, NYU Langone alleges that its trade dress consists of: "(a) a solid, single background color of purple, (b) headlines using white Benton Sans font lettering, (c) stacking of headlines with left alignment, and (d) periods as punctuation" (collectively, the "Advertising Trade Dress"). PAC ¶ 24. NYU Langone further alleges that the shade of purple used in its trade dress is PMS 2597 on the Pantone scale or a similar shade if the advertising medium requires a slightly different shade to achieve a consistent appearance to consumers. *Id.* The Court granted NYU Langone leave to amend its trade dress infringement claims. *See* Leave Opinion at 20.

NYU Langone decided to add trademark claims that were not included in the initial complaint.[2] To support these trademark-related claims, the PAC alleges that NYU Langone has

---

[1] References to the "PAC" are to the Proposed Amended Complaint. NYU Langone filed the PAC under seal at Dkt. 59 and publicly with redactions at Dkt. 61. Except where noted, the Court draws the background facts from the Proposed Amended Complaint and assumes the truth of all well-pled allegations.

[2] NYU Langone's trademark claims consist of trademark infringement, unfair competition, and false designation under 15 U.S.C. § 1125(a)(1)(A), as well as trademark dilution under NYGBL § 360-l, common law trademark infringement, and common law unfair competition.

an unregistered trademark[3] in its "Purple Mark," defined as "the color purple" in "the field of healthcare services in New York."  PAC ¶ 9.

The PAC at times blurs the distinction between NYU Langone's use of the color purple generally and the specific Purple Mark that it contends is its trademark.  For instance, the PAC points to the following as mere examples of NYU Langone's "extensive use of the color purple": lettering, a ribbon at an opening ceremony, scrubs, a photography backdrop at an NYU Langone event, and NYU Langone's website. *Id.* ¶ 10.  The PAC attaches several pictures as Exhibit A and describes it as containing "representative examples of NYU Langone's longtime and extensive use of the color purple," *id.* ¶ 11; Exhibit A, in contrast, is titled "NYU Langone ***Purple Mark***," PAC Ex. A, Dkt. 61-2 (emphasis added).  Examples in Exhibit A include the use of purple, often along with the NYU Langone logo, in advertising, signage, and wall-wrapping, PAC Ex. A at 1–7, 9–12, 15, 17–18; NYU Langone's website and social media pages, *id.* at 8, 13–14; brochures, *id.* at 16; the aforementioned ribbon-cutting ceremony and scrubs, *id.* at 19; a host of gift store items including clothing and a teddy bear, *id.* at 20; and a range of community, fundraising, and formal events, *id.* at 21–25.  From those descriptions, it appeared that NYU Langone's claim adopted Northwell's internal hyperbolic view that NYU Langone "owns purple." PAC ¶ 32.

The PAC alleges that the Purple Mark is used in signage on buildings to identify NYU Langone's healthcare facilities and advertising for NYU Langone.  PAC ¶¶ 12–15.  In addition to such usage "in marketing and advertising through a multitude of channels," the PAC also references the use of the Purple Mark at certain NYU Langone keystone events. *Id.* ¶ 16.  The Purple Mark purportedly permeates NYU Langone's "branding, advertising, marketing, website,

---

[3] NYU Langone alleged that it owns some registered trademarks that include purple designs, *see* PAC ¶ 22 (trademark of white cross in purple circle), but it has not registered a trademark in the color purple itself.

logos, PowerPoint presentations, stationery and business cards, a vast array of branded merchandise, and even the scrubs worn by its medical professionals." *Id.* ¶ 21. NYU Langone's Advertising Trade Dress features the Purple Mark, *id.* at p. 10, and NYU Langone's trademark claims are premised on its common law ownership of the Purple Mark "in connection with its healthcare services and facilities located in New York." *Id.* ¶ 62; *see also id.* ¶¶ 80, 84, 104.

In light of the broad description of the Purple Mark and the extensive list of examples provided in Exhibit A under the header "NYU Langone Purple Mark," the Court determined that NYU Langone had not adequately alleged that it owns "a trademark in the color purple that applies to signage, website design, social media posts, brochures, scrubs, lighting at fundraising events, and gift store items like t-shirts, teddy bears, sweatshirts, and even pet collars." Leave Opinion at 19. The Court determined that NYU Langone failed to state a claim that its expansive color trademark, applying to such a range of uses within the healthcare industry, was protectable. Leave Opinion at 17–20.

NYU Langone timely filed a motion for reconsideration. *See* Dkts. 75–77.

## DISCUSSION

### I. Standards for Reconsideration and Leave to Amend

A court's decision whether to grant a motion for reconsideration "is ultimately a matter of good sense." *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (quoting *Arizona v. California*, 460 U.S. 605, 644 (1983) (Brennan, J., concurring in part and dissenting in part)). A court has "wide discretion" to depart from its prior ruling. *Id.* at 73. "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (citation omitted).

Courts must "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The permissive standard reflects the "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted). Leave may be denied for futility, such as where a proposed amended complaint could not withstand a motion to dismiss. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015). In determining whether a proposed amended complaint would survive a motion to dismiss, the Court accepts all factual allegations in the proposed amended complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

## II. Plaintiffs May Amend the Complaint to Bring Narrower Trademark Claims Than Asserted in the Proposed Amended Complaint

Although the PAC alleges that NYU Langone claims an expansive trademark in the use of the color purple "in connection with its healthcare services and facilities located in New York," PAC ¶ 62, an allegation that would include (as depicted in Exhibit A) trademark protection over purple scrubs and purple items in hospital gift shops, in its motion for reconsideration, NYU Langone disavowed such a broad claim. *See, e.g.*, Pl. Mem., Dkt. 76, at 4 n.5 (clarifying that NYU Langone is "asserting its purple color mark only in connection with its advertising of healthcare services, not the advertising medium itself" (emphasis removed)). Upon reconsideration and accepting Plaintiffs' clarification that its claim is limited to the use of purple in advertising, the Court will permit NYU Langone to include trademark claims in its amended complaint only to the extent that it claims a trademark in the Purple Mark as a uniform, background color in its advertising and signage.

The Second Circuit has held that "no *per se* rule" governs whether a single-color mark merits trademark protection. *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,

5

696 F.3d 206, 224 (2d Cir. 2012).  Rather, "a single-color mark" in a particular industry can receive trademark protection if it is "distinctive;" that it is, if it "acquire[s] secondary meaning."  *Id.* at 216, 225-26.  If a single-color mark is distinctive, courts then analyze "whether [the] defendant's use of a similar mark is likely to cause consumer confusion."  *Id.* at 217 (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006)).  "Factors that are relevant in determining secondary meaning include '(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use.'"  *Id.* at 226 (quoting *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 143 n.4 (2d Cir. 1997)).

In its Leave Opinion, the Court analyzed those factors and concluded that NYU Langone had sufficiently alleged its trade dress claims premised on the infringement of its Advertising Trade Dress.  Leave Opinion at 7–17.  One feature of its Advertising Trade Dress is a solid, single background color of purple — specifically, shade PMS 2597 on the Pantone scale or similar color to achieve a consistent appearance.  PAC ¶ 24.  Drawing all reasonable inferences in the light most favorable to NYU Langone, the PAC alleges that the Advertising Trade Dress utilizes the Purple Mark.  *See id.* ¶¶ 12–15; PAC Ex. A at 2–7, 9–12, 15, 17–18; *see also* PAC at p. 10 (heading titled "NYU Langone Launches Its Distinctive Advertising Trade Dress, Featuring Its Iconic Purple Mark") (emphasis removed).

NYU Langone alleges that it has invested "hundreds of millions of dollars" promoting the Purple Mark, advertisements utilizing the Purple Mark have been successful in generating an interest in and preference for NYU Langone, and Northwell has attempted to copy the Purple Mark in its advertising.  PAC ¶¶ 21, 27–28, 46, 51, 55–56.  Because the Court has already concluded that these same factors are sufficient for NYU Langone's Advertising Trade Dress

infringement claims to survive a motion to dismiss, Leave Opinion at 12–13, and the Purple Mark is one feature of the Advertising Trade Dress, NYU Langone has sufficiently alleged that its Purple Mark carries secondary meaning, but only as a uniform, background color within NYU Langone's advertising and signage. *Cf. Christian Louboutin*, 696 F.3d at 226-28 (record supported protectable red trademark in the bottom sole of a shoe, contrasting with the adjoining portion, but not a monochromatic red shoe).

For the same reasons discussed in the Court's prior opinion, Plaintiffs have adequately alleged that Northwell's use of this same shade of purple as a uniform background color in advertising or signage is likely to confuse consumers. Leave Opinion at 14–17.

## CONCLUSION

For the foregoing reasons, NYU Langone's motion for reconsideration is GRANTED, and its motion for leave to amend the complaint is GRANTED IN PART and DENIED IN PART. As provided in the Court's Leave Opinion, the PAC sufficiently states the trade dress claims (Counts II, V, and VII). The PAC also sufficiently states the trademark claims (Counts I, III, IV, and VI), but only to the extent that the NYU Langone alleges that its use of the Purple Mark is a protectable trademark in its advertising and signage. Filing an amended complaint containing those claims would neither be futile nor cause undue prejudice.[4]

---

[4] NYU Langone's alternative request for the Court to certify the Leave Opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied as moot.

By not later than **Friday, December 6, 2024**, NYU Langone must file an amended complaint containing only the claims the Court has permitted to go forward. The amended complaint must include as exhibits: (1) a redline showing the changes from the initial complaint; and (2) a redline showing the changes from the PAC.

The Clerk of Court is respectfully directed to terminate the open motion at Dkt. 75.

**SO ORDERED.**

Date:  November 22, 2024
       New York, New York

                                        **VALERIE CAPRONI**
                                        **United States District Judge**